■ R.G. BAUER, Doing Business as R.G. BAUER & ASSOCIATES, Respondent, v GOODRICH & SHERWOOD ASSOCIATES, INC., Appellant. [758 NYS2d 200] —Lahtinen, J. Appeal from a judgment of the Supreme Court (Fromer, J.H.O.), entered January 17, 2002 in Greene County, upon a decision of the court in favor of plaintiff.

In 1992, plaintiff, who operated a sole proprietorship human resources consulting firm, and defendant, a human resources consulting and executive search firm, entered into an oral agreement whereby plaintiff provided various services to defendant on a particular project. During the course of the project, plaintiff submitted monthly bills to Chuck Wright, defendant's senior vice-president, who approved the bills, and plaintiff ultimately received $6,450 for his services. In 1994, defendant and plaintiff again entered into a verbal agreement for plaintiff to provide services on projects known as Great Brands and Alpha Wire. Wright indicated to plaintiff that he expected plaintiff's charges for the Great Brands project to be similar to the 1992 project costs and also claimed that he told plaintiff not to exceed $9,000 for the Alpha Wire project.

Plaintiff contends that he informed Wright that his hourly rate had increased from $75 per hour to $100 per hour. Plaintiff further testified that, during the course of the projects, the scope of the services that defendant wanted him to perform was significantly increased. While the two projects were in progress, plaintiff also started a third project for defendant, which was supervised by another employee of defendant and was known as the NPD project. Plaintiff sent defendant monthly bills from July to December 1994 setting forth his charges as they accrued for each of the projects. Although his bills were not being paid, plaintiff testified that his bills from the 1992 project had also been paid very late by defendant. Moreover, in his discussions with Wright regarding the bills, he stated that he received only apologies for the delay in payment and no questions regarding the amounts.

By December 1994, plaintiff had billed defendant a total of $38,419.23, including $20,800 on the Great Brands project and $13,800 on the Alpha Wire project. Defendant tendered total payments of $6,443.38 and unsuccessfully sought a compromise regarding the remaining charges. Plaintiff then commenced this action. Following disclosure and an unsuccessful motion by plaintiff for summary judgment, the parties stipulated to submit the case to a judicial hearing officer (hereinafter J.H.O.) to decide based upon the motion papers, which included depositions of plaintiff and Wright as well as various

exhibits. The J.H.O. found for plaintiff. Judgment was entered for $31,975.85, plus interest and costs. Defendant appeals.

In reviewing a nonjury trial, our authority to weigh and consider the evidence is as broad as the trial court (*see Mesick v State of New York*, 118 AD2d 214, 219 [1986], *lv denied* 68 NY2d 611 [1986]). While we afford deference to credibility determinations of the trial court when it has observed the witnesses testify (*see Matter of Roth v S & H Grossinger*, 284 AD2d 746, 748-749 [2001]; *Gold v New York State Bus. Group*, 282 AD2d 988, 989-990 [2001]), no such deference is implicated in the current case since the JHO's determination was premised upon submitted papers with no witnesses appearing in court. Nevertheless, our review of the record reveals no reason to reverse the judgment.

The parties agreed that plaintiff would be paid at an hourly rate. The fair preponderance of the evidence in the record establishes that plaintiff informed defendant at the commencement of the 1994 projects that his rate had increased since the prior project from $75 to $100 per hour. Indeed, not only was there testimony about the rate increase, but the rate increase is also reflected by the fact that the totals on all plaintiff's monthly bills for the 1994 projects were in hundred dollar units.

In addition to the rate increase at the beginning of the projects, it became apparent during the course of the projects that plaintiff was going to have to spend considerably more time on the projects than he had on the 1992 project. This increased time resulted primarily from the departure of an employee of defendant, who had assisted plaintiff during the 1992 project and had contributed significant technical expertise. Plaintiff testified that he understood from conversations with Wright that, in light of the change in circumstances, additional hours and compensation were authorized. Defendant's agreement to such a modification can be further inferred from the billing procedures. It is undisputed that plaintiff sent bills every month setting forth his charges. Wright testified that it was his ordinary procedure to review bills when received and to either approve them or, if he had a concern about a bill, to discuss it with the individual who submitted that bill. Although Wright received monthly bills from plaintiff, he never expressed any concern to him about the accumulating cost until January 1995. By such time, the Great Brands and Alpha Wire projects had been completed. The failure to interpose timely objections to the bills, as was the acknowledged procedure of defendant for disputing charges, constitutes strong evidence of defendant's

acquiescence to the charges (see Jim-Mar Corp. v Aquatic Constr., 195 AD2d 868, 869-870 [1993], lv denied 82 NY2d 660 [1993]).

Finally, we note that defendant did not present competent proof challenging plaintiff's claim for compensation regarding the NPD project and defendant did not contend that the services provided by plaintiff in any of the projects were less than satisfactory.

Cardona, P.J., Spain, Carpinello and Kane, JJ., concur. Ordered that the judgment is affirmed, with costs.