■ CHARLES T. DRISCOLL MASONRY RESTORATION COMPANY, INC., Respondent, v COUNTY OF ULSTER, Appellant. [836 NYS2d 362]—

Spain, J. Appeal from a judgment of the Supreme Court (Kavanagh, J.), entered May 23, 2006 in Ulster County, upon a decision of the court in favor of plaintiff.

This contract dispute arises in connection with exterior facade renovations performed on the Ulster County Office Complex, located in the Town of Ulster. Plaintiff was awarded a contract by defendant in the amount of $84,645[1] for the completion of specified work, including window installation, sealant replacement, Exterior Insulation and Finish System (hereinafter EIFS) repair and painting. EIFS—a system which involves applying insulation to the outer surface of a building and then coating it with synthetic stucco—utilizes panels of insulation connected at control joints which must be sealed against moisture.

Shortly after plaintiff began the work, defendant complained of a lack of uniformity in the application of the sealant over the

---

1. The agreed upon contract sum of $84,645 included a contingency allowance of $8,000 which could not be used unless a "change order" was signed and approved by defendant and the architect. The bid documents also provided that any "unused portion of the contingency allowance will be returned to [defendant] at the completion of the work."

EIFS control joints. After several meetings to address this and other issues, it was agreed—without a written change order—that plaintiff would perform a sample application using a different sealant and technique to accomplish the aesthetic qualities desired by defendant. At the same meeting, plaintiff's vice-president, Stephen Driscoll, informed defendant that the environmentally sensitive product that defendant had requested plaintiff use to remove mold from the building's facade was not working; the parties agreed—again, without a written change order—that plaintiff would instead use bleach.

Defendant inspected the sample sealant application prepared by plaintiff and accepted the new sealant, but again took issue with the manner in which it was being applied. Further work was done by plaintiff to alleviate defendant's concerns, but defendant eventually informed plaintiff that it was terminating the contract. Plaintiff appealed the termination, presenting defendant with evidence that the sealant had been applied within industry standards. After discussions about the work resulted in plaintiff repairing, sealing and coating a sample area of the building for defendant's inspection, defendant accepted the work and the project resumed. Continuing to find fault in plaintiff's performance, however, defendant ultimately terminated the contract by letter dated August 2, 2002.

A payment requisition prepared by plaintiff dated July 30, 2002 claimed a total of $41,668.50 worth of work had been completed under the contract. Driscoll testified, however, that this number did not reflect all of the work completed, but only the value of the work done in those areas of the building which had been entirely finished, including painting. He stated that while only approximately 20% of the painting had been completed on the job at the time the contract was terminated, a large majority of the prep work, including all the EIFS control joint repair and sealing, had been completed in areas which had not yet been painted and, thus, were not listed as complete on the requisition. In contrast, defendant sent plaintiff a letter indicating that plaintiff was owed only $10,127.27 and asked plaintiff to revise and resubmit the payment requisition in conformance with that total. Plaintiff never submitted a revised requisition. Eventually defendant hired another contractor to redo much of the work that plaintiff had performed.

Plaintiff commenced this action seeking payment under the contract and/or damages in quantum meruit. Following a nonjury trial, Supreme Court found that defendant breached the contract by wrongfully terminating plaintiff, plaintiff completed 80% of the work required by the contract at a value

of $67,716 and plaintiff had, at the request of defendant, performed additional work for which plaintiff was owed $34,860. Defendant appeals.[2]

"On our review of a verdict after a bench trial, we independently review the weight of the evidence and may grant the judgment warranted by the record, while according due deference to the trial judge's factual findings particularly where . . . they rest largely upon credibility assessments" (*Martin v Fitzpatrick*, 19 AD3d 954, 957 [2005]; *accord Eddyville Corp. v Relyea*, 35 AD3d 1063, 1064 [2006]). Here, we find ample evidence—including testimony from the contractor hired to redo the work, who found that the work which had been completed by plaintiff was not defective—to support Supreme Court's finding that defendant lacked a legal basis to terminate the contract. Indeed, on appeal, defendant does not focus on the finding that it breached the contract but, rather, on the issue of damages awarded to plaintiff, asserting first that plaintiff cannot recover more than $41,668.50—the amount reflected in plaintiff's July 2002 payment requisition. We disagree. Although the contract calls for written payment requisitions from the contractor, it does not make requisitions a prerequisite to payment in the event of breach by the owner. Furthermore, Driscoll's testimony fully supports Supreme Court's conclusion that the requisition did not reflect the total amount of work actually performed pursuant to the contract.

We do agree with defendant, however, that the contract's specific requirement for the use of written change orders precludes the award of damages beyond the contract price and any written changes thereto. "It is axiomatic that a written instrument should be enforced according to its terms" (*CGM Constr. v Miller*, 263 AD2d 831, 832 [1999] [citation omitted]), and a contractual clause precluding oral modifications is enforceable (*see* General Obligations Law § 15-301; *Greater Johnstown School Dist. v Frontier Ins. Co.*, 252 AD2d 615, 618 [1998]). Although such clauses can be deemed waived where "the conduct of the parties demonstrates an indisputable mutual departure from the written agreement and the changes were clearly requested by [defendant] and executed by [plaintiff]" (*Austin v Barber*, 227 AD2d 826, 828 [1996]; *see Rose v*

---

**2.** Defendant improperly appealed from Supreme Court's decision entered March 22, 2006, as opposed to its judgment entered May 23, 2006; nevertheless, because the decision and judgment grant identical relief we exercise our discretion to deem the appeal to have been taken from the judgment which subsumed the prior decision (*see* CPLR 5520 [c]; *Matter of Troy Sand & Gravel Co. v New York State Dept. of Transp.*, 277 AD2d 782, 783 [2000], *lv denied* 96 NY2d 708 [2001]).

*Spa Realty Assoc.*, 42 NY2d 338, 341 [1977]), we cannot agree that the record supports such a finding in this case.

Here, Supreme Court awarded plaintiff damages based on the contract price and, in addition, awarded plaintiff $10,000 for rewashing the exterior of the building with bleach and $22,600 for twice recaulking the building following complaints by defendant. Although in each instance it is without question, given the minutes of the meetings between the parties, that defendant agreed that the rewashing and recaulking should be done, it is conceded that no change order was issued approving any additional expense in relation to this work. Unlike a situation where work that was clearly outside the scope of the written agreement was requested by the owner and completed by the contractor, leading to the conclusion that the need for a written change order had been mutually discarded (*see e.g. CGM Constr. v Miller, supra* at 832-833; *Austin v Barber, supra* at 828 [1996]; *Weaver v Acampora*, 227 AD2d 727, 728 [1996]), here plaintiff was repeating work contemplated by the contract in an apparent effort to satisfy the clearly disgruntled defendant. Given defendant's voiced dissatisfaction with the quality of plaintiff's work, it is not clear that defendant ever intended to compensate plaintiff for the extra work performed, despite its recognition of the need for the work. Furthermore, during the same time period, it is undisputed that plaintiff did procure at least two written change orders—authorizing additional masonry and joint repair—evincing a continued intent by the parties to require contract changes to be in writing. We find insufficient proof on this record that the parties waived the requirement of written change orders; thus, plaintiff is precluded from recovering the additional claimed amounts (*see M. Gold & Son v A.J. Eckert, Inc.*, 246 AD2d 746, 748 [1998]; *cf. Harder v Reedy*, 217 AD2d 833, 834 [1995]).

Nor may plaintiff recover these amounts based on a quantum meruit theory. The damage award was calculated based upon the contract price. Plaintiff cannot recover both a damage award based on anticipated profits on the contract as well as a quantum meruit award (*see Harder v Reedy, supra* at 834; *Farrell Heating, Plumbing, A.C. Contrs. v Facilities Dev. & Improvement Corp.*, 68 AD2d 958, 959 [1979]). Further, because the additional labor and materials claimed were for work originally contemplated by the contract, this is not a case where a quantum meruit award is appropriate because it is based upon an additional agreement by the parties which can be said to constitute " 'a qualitative change in the nature of the work outside the contemplation of the contract' " (*Triple Cities*

*Constr. Co. v State of New York,* 194 AD2d 1037, 1039 [1993], quoting *Tufano Contr. Corp. v State of New York,* 25 AD2d 329, 330-331 [1966]; *cf. Colonial Asphalt Paving Corp. v State of New York,* 49 AD2d 340, 342 [1975]).

In addition, we find that the record does not support the use of the full $84,645 contract price to calculate plaintiff's damages. Supreme Court determined that plaintiff had completed 80% of the work contemplated by the contract and, thus, awarded plaintiff $67,716 to reflect 80% of the contract price of $84,645. The $84,645 contract price, however, is composed of a $76,645 bid price plus the additional $8,000 contingency allowance, which could not be paid out without an approved change order. Although at least two change orders were issued during the life of the contract, no change orders are included in the record and, thus, the precise amount of work approved under the contingency allowance cannot be ascertained. According to the figures submitted by Driscoll in his July 30, 2002 requisition for payment, $2,676.75 of the contingency allowance had been utilized up to that point. Inasmuch as defendant, in its brief on appeal, concedes this as an appropriate charge against the $8,000 contingency allowance and the record evidence is insufficient to support a greater amount, we will hold plaintiff to that number.

Accordingly, plaintiff is entitled to 80% of the adjusted contract price of $76,645 ($84,645 less the $8,000 contingency allowance), which is $61,316, plus that portion of the contingency allowance conceded by defendant, $2,676.75, for a total of $63,992.75 plus interest from the date of termination.

Cardona, P.J., Crew III, Lahtinen and Kane, JJ., concur. Ordered that the judgment is modified, on the law and facts, without costs, by reducing the damage award to plaintiff to $63,992.75 and, as so modified, affirmed.