■ PHOENIX CORPORATION, Respondent, v U.W. MARX, INC., et al., Appellants. [881 NYS2d 714]—

Stein, J. Appeal from an order of the Supreme Court (Doyle, J.), entered April 9, 2008 in Rensselaer County, upon a decision of the court in favor of plaintiff.

Plaintiff was hired as a subcontractor by defendant U.W. Marx, Inc. (hereinafter defendant) to install steel reinforcement on a fast-track construction project pursuant to a written subcontract executed by the parties. It is undisputed that plaintiff's contemplated start date was delayed for a variety of reasons, all unrelated to plaintiff.

Shortly after plaintiff finally began its work with an initial crew of six workers and an anticipated maximum crew of 15, defendant's vice-president asked David J. Murray, plaintiff's owner, to put between 25 and 35 workers on the job with each working six 10-hour days per week. When Murray initially indicated that he would not accede to this request, an oral agreement was reached. According to Murray, in exchange for his agreement to increase the anticipated number of workers by more than twofold and to pay unanticipated overtime, defendant agreed to float plaintiff's entire weekly payroll and to cover the additional overtime expense. Defendant's vice-president acknowledges that he orally agreed to *float* plaintiff's weekly payroll (which included overtime costs) if Murray acceded to his request that plaintiff substantially increase the number of workers on the job. However, he denies that this oral modification to the written subcontract included an agreement to *pay* overtime expenses.

Following this conversation, plaintiff substantially increased the number of workers on the project and defendant began paying plaintiff's weekly payroll. After a dispute arose concerning plaintiff's failure to pay union benefits, defendant stopped floating the payroll. Plaintiff thereafter resumed paying its own weekly payroll and ultimately completed the job, with the exception of a small area at a particular loading dock. As to this unfinished work, plaintiff made three attempts to complete it but the area was not ready through no fault of its own.

Plaintiff, as now relevant, commenced this action to recover $209,650 in overtime expenses pursuant to the alleged oral agreement. Defendant, along with its bonding companies, counterclaimed for back charges pertaining to the unfinished work at the loading dock and for reimbursement of its payment of one half of the union's counsel fees in a federal action commenced by the union to collect moneys due.* Following a nonjury trial, Supreme Court found that the parties entered into an oral agreement that included a commitment by defendants to cover plaintiff's overtime expenses and that this oral agreement was enforceable despite a clause in the subcontract precluding oral modifications. The court also denied defendants' requests for the back charges and for reimbursement of counsel fees. Defendants now appeal.

Plaintiff has failed to demonstrate an enforceable oral modification to the parties' written subcontract with regard to the payment of overtime expenses. Generally, a written agreement that includes a provision prohibiting oral modification—as does the subcontract here—"cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement . . . is sought" (General Obligations Law § 15-301 [1]; *see Rose v Spa Realty Assoc.*, 42 NY2d 338, 343 [1977]). However, the statutory requirement of a writing may be avoided by proof of either partial performance of an oral agreement to modify a written contract, which must be "unequivocally referable to the oral modification" (*Rose v Spa Realty Assoc.*, 42 NY2d at 343), or equitable estoppel, based upon conduct which is "not otherwise . . . compatible with the agreement as written" (*id.* at 344; *see Turk v Anello*, 280 AD2d 819, 820 [2001]). The Court of Appeals has articulated that it is not sufficient that the conduct of the parties indisputably evidences a mutual departure from the written agreement if such conduct does not satisfy these rules (*see Rose v Spa Realty Assoc.*, 42 NY2d at 344).

* Plaintiff and defendants agreed to split the union's counsel fees in that federal action with each reserving the right to seek reimbursement from the other.

Here, the written contract provided for compensation to plaintiff based upon a price per ton of reinforcing steel, which price was to be "all inclusive." The contract further provided that the price per ton "includes the cost of any overtime or work shifts necessary for completion of the work of this subcontract and the project in accordance with the contractor's schedules," and that plaintiff would be responsible for payment of its own payroll. There is no dispute that the written contract contemplated plaintiff's payment of overtime expenses, that in response to defendant's request to accelerate plaintiff's work it was necessary for plaintiff to perform some of its base contract work during overtime hours thereby increasing its labor costs, or that defendant agreed to advance plaintiff's payroll and overtime expenses. Nor is there any dispute that the parties varied from the terms of the written contract simply by virtue of the fact that defendant advanced payments to plaintiff in order to meet its payroll and overtime expenses. Since it is uncontroverted that the parties agreed to orally modify the agreement and did, in fact, do so, we have no disagreement with Supreme Court's finding to that extent. However, the issue is not whether *any* oral modification was made, but whether the parties' conduct is unequivocally referable to an agreement that defendant would actually assume responsibility for the payment of any of plaintiff's overtime expenses.

Neither plaintiff's hiring of additional laborers (and incurring unanticipated overtime costs) nor defendant's advancement of payments to plaintiff are unequivocally referable to such an agreement. For example, inasmuch as plaintiff concedes that the amounts advanced by defendant to pay plaintiff's payroll were to be offset against amounts otherwise due to plaintiff pursuant to the written agreement, the payment of overtime expenses is consistent with the same intent. Indeed, Murray testified that, notwithstanding defendant's oral agreement to advance payroll expenses, including overtime, the overtime expenses remained plaintiff's responsibility. His only testimony regarding any alleged agreement by defendant to cover any of plaintiff's expenses was his statement that there was no "concrete number placed on it but it was a good faith agreement that there would be compensation at the end of the job." This is clearly insufficient to establish the purported agreement. Likewise, the fact that plaintiff spent more on overtime costs than originally anticipated is not sufficient to demonstrate that the parties agreed to deviate from the written agreement with respect to responsibility for those costs (*see Charles T. Driscoll Masonry Restoration Co., Inc. v County of Ulster*, 40 AD3d 1289, 1292 [2007]; *Isaacs Bus. Ventures v Thompson*, 223

AD2d 957, 958 [1996]). Under these circumstances, defendant's agreement to advance payments on plaintiff's behalf is not incompatible with plaintiff's ultimate responsibility therefor, as set forth in the written subcontract. In addition, the record demonstrates that many modifications to the contract involving work and compensation—including several that concerned authorization for additional work and overtime—were made with written change orders, demonstrating the parties' adherence to the terms of the written contract (*see Charles T. Driscoll Masonry Restoration Co., Inc. v County of Ulster*, 40 AD3d at 1292). This prior conduct of the parties is a strong indication that, had the parties agreed to deviate from the written contract in a manner as significant as the modification alleged by plaintiff here, such agreement would have been reflected in a written change order.

Absent a demonstration of partial performance or entitlement to equitable estoppel based upon conduct "unequivocally referable to the purported oral modification" (*Turk v Anello*, 280 AD2d at 820)—to wit, to require defendant to compensate plaintiff for overtime costs—the statutory requirement of a writing was not obviated. Therefore, there was no basis for Supreme Court to delve into determinations of witness credibility regarding the terms of the alleged oral modification. Accordingly, we modify the judgment by reducing it in the amount of $191,870. In view of this determination, defendant's dispute regarding plaintiff's precise calculation of overtime costs, raised for the first time on this appeal, is academic.

Finally, we find no error in Supreme Court's determination that defendants failed to meet their burden with respect to their counterclaims. According to the testimony of defendant's own project manager, plaintiff made efforts to complete the unfinished work on the subject dock but defendant, through its own fault, was not "ready for them." The record further reveals that the union's delay in receiving its money was based in part on defendant's dilatory conduct.

Mercure, J.P. and Kavanagh, J., concur.

McCarthy, J. (concurring in part and dissenting in part). Clearly this case rested in large part upon Supreme Court's resolution of a sharp credibility dispute concerning the entire scope of an oral agreement between plaintiff and defendant U.W. Marx, Inc. (hereinafter defendant) in the course of a large scale and fast-track construction project. This credibility dispute was resolved in favor of plaintiff as Supreme Court found that the parties entered into an oral agreement that included a commitment by defendant to pay overtime expenses incurred by

plaintiff. Supreme Court further found, correctly in my view, that this oral agreement was enforceable despite a clause in the subcontract precluding oral modifications. In modifying Supreme Court's order, the majority concludes that "the issue is not whether *any* oral modification was made, but whether the parties' conduct is unequivocally referable to an agreement that defendant would actually assume responsibility for the payment of any of plaintiff's overtime expenses." We believe this too narrowly defines the issue. The issue is more properly framed as whether an oral agreement to modify the written subcontract was made and whether there was partial performance of that entire agreement (not just one component of that agreement). Finding that plaintiff sufficiently demonstrated an enforceable oral modification to the subcontract, we respectfully dissent.

Defendant was hired to complete excavation and concrete work under a $5.5 million contract with the project's construction management firm. Plaintiff, in turn, was hired to install steel reinforcement under a $408,940 subcontract with defendant.[1] According to the testimony of the senior project manager employed by the management firm, defendant had never taken on a project of this magnitude and made several management errors in orchestrating work and coordinating subcontractors. Moreover, according to this witness, none of the problems at the job site related to plaintiff's job performance and plaintiff would have been able to complete its responsibilities without incurring overtime had the project not been delayed.

As noted by the majority, plaintiff's start date under the subcontract was thus delayed through no fault of its own.[2] This delay prompted a discussion between plaintiff's owner, David Murray, and defendant's vice-president, John Bishop, which is at the heart of this dispute. Murray testified that, shortly after plaintiff was finally able to begin its installation work on the project, Bishop came to him and asked if it would employ more than *double* the number of anticipated ironworkers and have *each* ironworker work substantial amounts of overtime (i.e.,

---

1. Plaintiff's owner, David Murray, testified, without contradiction, that he consulted with defendant's estimator about the parameters of the job before placing plaintiff's bid and was told that only *minimum* overtime would be necessary. Therefore, although he originally intended to bid $440 per ton without overtime, he and defendant's estimator ultimately negotiated a set unit price of $460 per ton (which included $17,780 in contemplated overtime).

2. Of note, defendant spent considerable effort during the trial defending against the claim for overtime expenses on the ground that plaintiff was the cause of many delays. The evidence overwhelmingly established that plaintiff was not the source of the project's many delays. Defendant has abandoned this stance on appeal.

*each* worker was to work 20 hours of overtime per week). Inasmuch as the project as bid did not remotely encompass this magnitude of overtime work or manpower, because plaintiff had only expended approximately $3,000 in labor at that point and because plaintiff was not responsible for the delays that resulted in the "fiasco" faced by defendant, Murray told Bishop that it made more financial sense for plaintiff to just walk away from the job. Indeed, according to Murray, if plaintiff acceded to defendant's request to so drastically increase its work force and overtime expenses without an agreement for defendant to pay these expenses at this point, it would have constituted "corporate suicide."[3]

According to Murray, Bishop then therefore offered to not only float plaintiff's entire weekly payroll if plaintiff agreed to stay on the job, but to also pay the additional overtime expenses. Murray agreed, which resulted in plaintiff staying on the job and complying with the requests for the expanded work force and overtime hours. Significantly, Bishop did not dispute that, shortly after plaintiff was finally able to begin its installation work on the project, he asked Murray to substantially increase his work force and also orally agreed to float plaintiff's weekly payroll inclusive of overtime. Bishop denied, however, that this oral arrangement included an ultimate agreement to compensate plaintiff for overtime expenses. There is no dispute that, following this conversation, Bishop notified the management firm that defendant requested additional workers on site to respond to delays, and that he had personally taken action to locate even more workers.

On appeal, defendant argues that the "*alleged* oral exchange [between Murray and Bishop] does not constitute an oral modification to the [s]ubcontract" (emphasis added) and further claims that Supreme Court "should have determined that [plaintiff] failed to establish that the parties entered into an oral agreement." Defendant's own witnesses, however, did not dispute that the parties entered into an oral agreement during this "alleged" oral exchange whereby they varied from the terms of the subcontract. The real dispute concerned the precise terms of it. Significantly, Supreme Court resolved this sharp credibility dispute in plaintiff's favor. While this Court, upon reviewing a verdict following a nonjury trial, independently reviews the weight of the evidence and may grant the judgment

---

**3.** To this end, the superintendent employed by the project's management firm confirmed that plaintiff "bid the job for so many guys to put so much tonnage in a day . . . . When [Murray] went over that limit there was no way he was going to get the tonnage to pay for the men."

warranted by the record, this Court accords due deference to factual findings particularly where, as here, they rest largely upon credibility assessments (*see Charles T. Driscoll Masonry Restoration Co., Inc. v County of Ulster*, 40 AD3d 1289, 1291 [2007]). Indeed, this case did rest largely upon the credibility assessment of Murray and Bishop with the record providing no reason whatsoever to disturb Supreme Court's implicit decision to credit the testimony of Murray, who testified that the oral agreement included payment of overtime, over that of Bishop, who claimed that it did not (*see Weaver v Acampora*, 227 AD2d 727, 728 [1996]).

Next, the Court of Appeals has held that an oral modification to a written contract will be enforced if there is partial performance that is "unequivocally referable to the oral modification" (*Rose v Spa Realty Assoc.*, 42 NY2d 338, 343 [1977]; *see Turk v Anello*, 280 AD2d 819, 820 [2001]; *Isaacs Bus. Ventures v Thompson*, 223 AD2d 957, 958 [1996]; *Pau v Bellavia*, 145 AD2d 609, 610 [1988]), that is to say, "not compatible with any option in the written agreement" (*Rose v Spa Realty Assoc.*, 42 NY2d at 345). Here, there was partial performance that is unequivocally referable to the oral modification. To this end, the oral modification was not exclusively an agreement to cover overtime expenses such that the parties' conduct must be solely and only referable to this aspect of it. Rather, the oral modification included an agreement to more than double the workers, significantly increase overtime hours, compensate plaintiff for the additional expenses incurred for these overtime hours (if Murray is to be believed) and to modify the payment terms between the parties (with defendant taking on the noncontractual obligation of paying plaintiff's currently weekly payroll inclusive of overtime). Plaintiff's conduct in substantially increasing its anticipated work force and overtime expenses at defendant's specific request, at a time when it could have walked away from the project, and defendant's conduct in assisting plaintiff in securing more workers on the job and paying plaintiff's weekly payroll, despite no contractual obligation to do either, constituted the requisite partial performance.

Defendant argues that its agreement to pay plaintiff's current weekly wages was consistent and compatible with their written agreement. We disagree. While articles 29 and 33 of the subcontract gave defendant certain options in the event that plaintiff failed to pay "wages," "bills" or other financial "obligations," no such triggering event had occurred at the time the parties entered the oral agreement. In other words, at the time of the oral agreement, plaintiff had not failed to comply with its

contractual obligation to pay the weekly wages of its workers, and defendant, therefore, had no occasion to invoke the provisions under article 29 or 33. To the contrary, defendant offered to pay *current* weekly wages for plaintiff, which was indeed a major departure from and, thus, inconsistent with the subcontract, particularly articles 29 and 33.

With respect to plaintiff's conduct, we are unpersuaded by the majority's contention that "the fact that plaintiff spent more on overtime costs than originally anticipated is not sufficient to demonstrate that the parties agreed to deviate from the written agreement with respect to responsibility for those costs." The uncontradicted proof at trial established that the amount of money spent on overtime was $209,650, which was 10 times the amount of anticipated overtime and 51% of the original per ton contract price. These extraordinary and uncontradicted figures are alone compelling proof that the parties did agree to deviate from the written agreement with respect to responsibility for overtime costs, particularly where plaintiff had the option of walking away from the project with only $3,000 in out-of-pocket expenses. In sum, as the conduct of the parties demonstrates an indisputable mutual departure from the written agreement, Supreme Court did not err in finding that plaintiff was entitled to its claim for overtime based on this oral agreement (*see Rose v Spa Realty Assoc.*, 42 NY2d at 343-344; *CGM Constr. v Miller*, 263 AD2d 831, 832-833 [1999]; *Austin v Barber*, 227 AD2d 826, 828 [1996]; *Pau v Bellavia*, 145 AD2d at 610).

Finally, sufficient credible evidence was also adduced establishing that plaintiff substantially relied upon the oral modification to its detriment. As noted by the Court of Appeals, "[o]nce a party to a written agreement has induced another's significant and substantial reliance upon an oral modification, the first party may be estopped from invoking [General Obligations Law § 15-301] to bar proof of that oral modification" (*Rose v Spa Realty Assoc.*, 42 NY2d at 344). Here, Murray's testimony established that he relied upon Bishop's oral assurance to cover additional payroll expenses so as not to commit "corporate suicide." Moreover, the conduct relied upon to establish estoppel—Murray's conduct in staying on the job and increasing work force and overtime when he could have walked away and Bishop's conduct in agreeing to pay plaintiff's payroll inclusive of overtime—was not "otherwise . . . compatible with the agreement as written" (*id.* at 344).

We would affirm the judgment in its entirety.

Spain, J., concurs. Ordered that the order is modified, on the

law, without costs, by reducing the amount thereof by $191,870, and, as so modified, affirmed.