■ Kevin Seymour et al., Respondents, v Northline Utilities, LLC, et al., Appellants. [914 NYS2d 322]—

McCarthy, J. Appeals (1) from an order of the Supreme Court (Dawson, J.), entered October 1, 2008 in Clinton County, which, among other things, partially granted plaintiffs' motion for summary judgment, (2) from an order of said court, entered January 9, 2009 in Clinton County, upon a decision of the court in favor of plaintiffs, and (3) from the judgment entered thereon.

The parties entered into an asset acquisition agreement whereby defendant Northline Utilities, LLC purchased most of the assets and goodwill of plaintiff North Country Mechanicals, Inc. The agreement also incorporated a noncompetition agreement and an employment agreement for plaintiff Kevin Seymour to work for Northline. Plaintiffs commenced this action alleging that defendants ceased making payments under a promissory note associated with the agreement. Defendants filed counterclaims alleging, among other things, violations of the noncompetition agreement and failure to deliver assets free of liens and encumbrances. In an October 2008 order, Supreme Court, among other things, partially granted plaintiffs' motion for summary judgment on the complaint. Following a nonjury trial on the remaining issues, the court found in favor of plaintiffs and dismissed the counterclaims. Defendants appeal from the two orders and the judgment entered thereon.[1]

Supreme Court did not err in dismissing the portion of the counterclaim pertaining to the transfer of assets. While on our consideration of a nonjury trial we may review the evidence and independently render judgment as warranted by the record, we grant deference to the trial court's factual findings, especially if they rest largely on credibility determinations (see *Charles T. Driscoll Masonry Restoration Co., Inc. v County of Ulster*, 40 AD3d 1289, 1291 [2007]). The counterclaim vaguely alleged a failure to deliver $20,000 worth of assets free of liens and encumbrances. On the motion for summary judgment, Northline's owner and president, defendant James C. Atkins, averred that plaintiffs failed to deliver title to one vehicle worth $35,000,

---

1. Inasmuch as defendants have not addressed the October 2008 order granting plaintiffs summary judgment on the promissory note, or Supreme Court's holding that Seymour did not violate the employment agreement, any arguments relating to those issues are deemed abandoned (see *Ostuni v Town of Inlet*, 64 AD3d 854, 855 n [2009]).

which prevented defendants from registering the vehicle and thereby using it.[2] At trial, contrary to his motion affidavit and deposition testimony, Atkins testified that plaintiffs failed to deliver titles for three vehicles and that he had sent plaintiffs a letter requesting those titles. Atkins also testified regarding rental costs to replace those vehicles, but his testimony was not supported by documentary proof. Seymour testified that he delivered titles to all of the vehicles encompassed by the asset acquisition agreement and that he never received a letter from Atkins mentioning lack of title for three vehicles. Giving deference to Supreme Court's credibility determinations and its factual findings based on those determinations, defendants did not prove that plaintiffs failed to deliver title to any vehicles (*see Cotton v Beames*, 74 AD3d 1620, 1622 [2010]).

Supreme Court properly found that plaintiffs did not violate the terms of the noncompetition agreement. Both parties contend that the agreement is clear and unambiguous. The agreement clearly prohibits plaintiffs from engaging in, providing services to or deriving income from any "[c]ompeting [b]usiness." That term is defined as any business that "manufactures, assembles, distributes or sells . . . any products or services competitive with those manufactured, assembled, distributed or sold by Northline . . . or under development by Northline." The agreement is unclear, however, because it does not define what services are "competitive" with Northline or what products or services Northline has under development.

To resolve this ambiguity, Supreme Court considered extrinsic evidence concerning the meaning of the contract's terms (*see Capital Dist. Enters., LLC v Windsor Dev. of Albany, Inc.*, 53 AD3d 767, 770 [2008]; *CV Holdings, LLC v Artisan Advisors, LLC*, 9 AD3d 654, 657 [2004]), namely testimony from Atkins and Seymour, and Northline's Web site. Atkins testified that, at the time the agreement was signed, Northline was engaged in high voltage and commercial electric work. For the first time at trial, Atkins testified that Northline had also performed inside electrical work and work involving security cameras; at his deposition, he had testified that Northline had never done any work installing security cameras. Seymour testified that he had bid on and accepted a job with the Office of General Services to

---

**2.** Despite that vehicle not being described in the motion papers, other than its value, Supreme Court originally deemed the assertion regarding title uncontroverted and the October 2008 order required plaintiffs to deliver title to defendants. At trial, plaintiffs explained that title was not delivered in accordance with that order because they were unaware of what vehicle the order referenced.

build a shed and install security cameras at a state prison. He also was on bidder's lists for several state jobs, meaning that he sought and received packets of information for potential bidders, but he had not bid on any of them except the one at the prison. Northline did not seek to be on the bidder's list for any of the mentioned projects. Atkins testified that Northline wanted to expand into that market, but the company was busy with other jobs at the time and was hampered in expanding because Seymour terminated his employment with Northline. Seymour also testified that he was earning money by building houses and working on smaller indoor electrical jobs.

Supreme Court noted that if defendants wanted to prohibit plaintiffs from performing any electrical work, the agreement could have explicitly included such a prohibition. Instead, the agreement only prohibited engaging in "competitive" services. After assessing the witnesses's credibility, the court reasonably determined that the one prison job of installing security cameras was not competitive with Northline's high voltage work, nor with any business "under development" by Northline (see *Charles T. Driscoll Masonry Restoration Co., Inc. v County of Ulster*, 40 AD3d at 1291). Similarly, merely seeking information on potential state jobs did not constitute soliciting Northline's prospective customers. Seymour's residential electrical work also was not the type of business Northline conducted. Thus, the proof did not support defendants' counterclaim alleging that plaintiffs violated the covenant not to compete (see *Cotton v Beames*, 74 AD3d at 1622).

Defendants did not argue in Supreme Court that plaintiffs' actions violated the portion of the agreement wherein they sold North Country Mechanicals' goodwill, or that the noncompetition agreement was ancillary to the overall asset acquisition agreement. Accordingly, those contentions are not preserved for appellate review (see *Goodspeed v Adirondack Med. Ctr.*, 43 AD3d 597, 598 [2007]; *see also O'Connor v Demarest*, 74 AD3d 1522, 1524 [2010]). In any event, the finding that plaintiffs did not violate the noncompetition agreement defeats these claims as well.

Mercure, J.P., Peters, Malone Jr. and Stein, JJ., concur. Ordered that the orders and judgment are affirmed, with costs.