Byung Choon Joe v State of New York (2022 NY Slip Op 01357)





Byung Choon Joe v State of New York


2022 NY Slip Op 01357


Decided on March 3, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:March 3, 2022

532176
[*1]Byung Choon Joe, Appellant,
v
State of New York, Respondent.

Calendar Date:January 10, 2022

Before:Egan Jr., J.P., Clark, Pritzker and Colangelo, JJ.

Napoli Shkolnik, PLLC, New York City (Michael J. Hutter of Powers & Santola, LLP, Albany, of counsel), for appellant.
London Fischer, LLP, New York City (Anthony F. Tagliagambe of counsel), for respondent.
Allen & Overy LLP, New York City (Sapna Palla of counsel), for Asian American Bar Association and another, amici curiae.



Egan Jr., J.P.
Appeal from a judgment of the Court of Claims (Milano, J.), entered May 27, 2020, upon a decision of the court in favor of claimant.
Claimant was injured on July 24, 2013 when he fell approximately six feet from a scaffold while removing asbestos at Building 9 of the Harriman State Office Campus in the City of Albany. This claim ensued and, after the Court of Claims granted claimant's motion for summary judgment on the issue of liability, it conducted a nonjury trial to determine the appropriate amount of damages. The Court of Claims thereafter awarded damages in the amount of $461,447.16, representing $221,447.16 for past medical expenses, $15,000 for past lost earnings and $225,000 for past pain and suffering.[FN1] Claimant appeals from the judgment entered thereon.
We affirm. Claimant challenges the damages award in various respects. Although "on our consideration of a nonjury trial we may review the evidence and independently render judgment as warranted by the record, we grant deference to the trial court's factual findings, especially if they rest largely on credibility determinations" (Seymour v Northline Utils., LLC, 79 AD3d 1386, 1387 [2010]; see Baba-Ali v State of New York, 19 NY3d 627, 640 [2012]; Roque v State of New York, 199 AD3d 1092, 1094 [2021]). Although we afford deference to the Court of Claims' assessment of the credibility of the witnesses who testified before it, similar deference is not needed with regard to those physicians and experts whose reports and deposition testimony transcripts were entered into evidence in lieu of placing them on the stand (see Bauer v Goodrich & Sherwood Assoc., 304 AD2d 957, 958 [2003]). Nevertheless, after exercising our "broad authority to independently review the probative weight of the evidence," we perceive no reason to disturb the judgment (Driscoll v State of New York, 160 AD3d 1240, 1242-1243 [2018] [internal quotation marks and citations omitted]; accord Roque v State of New York, 199 AD3d at 1094).
Claimant testified at trial, relating how he lost consciousness and injured his head, neck, back, right shoulder and elbow, and left wrist and elbow when he fell from the scaffold. He acknowledged that he had neck problems prior to the accident but denied having any preexisting problems with his right shoulder or back. Claimant, whose primary language is Korean, testified that he did not have an interpreter when he arrived at the hospital emergency room on the day of the accident and that it was difficult for him to communicate with the medical staff in English. Nevertheless, he testified to telling hospital staff about all of his injuries and pointing out swelling in his left wrist and other bruising. He also related how he returned to the hospital a week later with similar complaints in an effort to obtain a further MRI, and he described how he required treatment for his injuries and how they have caused continuing problems that have prevented him from working.
Claimant's [*2]medical records and other proof in the record undercut his account of both his prior health problems and the symptoms that supposedly arose as a result of injuries sustained in the accident. For example, the physician who treated claimant until 2015 gave deposition testimony in which he detailed how claimant had preexisting degenerative changes in his lumbar and cervical spine that had caused neck and back pain, how he had previously injured his right elbow, and how he had longstanding complaints of right shoulder pain. The discharge summary of claimant's hospital emergency room visit on the day of the accident further contradicts his testimony, reflecting that he only complained of pain in his neck and his right arm from the shoulder down and denied losing consciousness after the accident. The physical examination of claimant on that date disclosed fluid buildup, swelling and/or limited range of motion in his right shoulder, elbow and thumb but, notably, full range of motion in all of his other joints and no further indications of trauma. The diagnostic imaging conducted found no evidence of trauma beyond soft tissue swelling in claimant's right shoulder, but did confirm the existence of "[m]ultilevel degenerative changes" in his cervical spine. The records of claimant's second visit to the hospital on July 30, 2013, at which he did utilize a translator, reflect that he made complaints more consistent with his trial testimony, including that he had injured his left wrist in the accident. He again, however, denied losing consciousness. He was also clear that he only wanted an MRI of his right elbow and shoulder on that visit, and he declined, among other things, a thorough physical examination, additional X rays or a referral to an orthopedist. There were also indications that claimant had misrepresented his medical history, offered varying explanations as to what happened during the accident, and exaggerated his symptoms to medical and vocational experts retained by both him and defendant. The Court of Claims had the opportunity to view claimant on the stand and, in view of the foregoing, found that his testimony was neither persuasive nor credible. We accord deference to that assessment.
Upon stipulation, claimant further presented the report and deposition testimony of Mark McMahon, an expert orthopedic surgeon who examined claimant, reviewed some of his medical records and opined that injuries to his left wrist, right shoulder and elbow, head and cervical and lumbar spine were either caused or aggravated by the accident. McMahon also noted that claimant had ongoing problems with his left wrist, right shoulder, cervical spine and lumbar spine that could well require further medical treatment, and that his condition was permanent and would interfere with his activities and quality of life. McMahon acknowledged at his deposition, however, that he had neither reviewed all of the medical records documenting claimant's treatment nor spoken [*3]to any of claimant's treating physician. He further recognized that he had not known that claimant had neck, back, shoulder and elbow problems before the accident and that it would have been good medical practice to conduct that review before rendering an opinion on the cause of those problems. McMahon also acknowledged that claimant had misled him into believing that none of the body parts supposedly impacted by the accident had previously been injured or required medical treatment, and he admitted that such information would have been "helpful" in offering any opinion as to causation. McMahon further conceded that claimant did not give any details as to how the accident itself occurred, that he made no other effort to learn those facts, and that such information would be relevant to assessing whether claimant's ongoing physical problems were connected to it. The Court of Claims cited the foregoing facts in finding McMahon's opinion to be unpersuasive and, suffice it to say, we share the court's skepticism.
In contrast, defendant presented the opinion of a radiologist, Gordon Sze, who examined numerous images of claimant's spine taken both before and after July 24, 2013 and found that claimant had preexisting degenerative changes of the cervical and lumbar spine that did not worsen in the wake of the accident. Defendant further presented the report and deposition testimony of Andrew Bazos, an orthopedic surgeon who examined claimant, conducted a thorough review of his medical records and found that he suffered, "at most minor, self-limited soft tissue strain injuries of the neck, right shoulder, right elbow, and lower back as a result of the" accident that would have resolved with appropriate care. Bazos rejected the claimed link between the accident and claimant's fractured left wrist altogether, stating that a fracture would have caused pain, soft tissue injury and decreased range of motion that would have, if the fracture was sustained in the accident, been observed and noted during claimant's first visit to the hospital on July 24, 2013.[FN2] Accordingly, Bazos opined that there was no connection between the accident and claimant's continuing left wrist, right shoulder, back and neck problems. The Court of Claims was free to resolve the conflict between the medical opinions by crediting those offered on defendant's behalf (see Serrano v State of New York, 179 AD3d 1357, 1359 [2020], lv denied 35 NY3d 914 [2020]), and we perceive no reason to disturb its determination that claimant did not have any continuing physical problems that were linked to the accident (see Reynolds v State of New York, 95 AD3d 1464, 1465-1466 [2012]; Araujo v State of New York, 61 AD3d 585, 585-586 [2009]).[FN3]
The Court of Claims did award damages for past pain and suffering and past lost earnings related to soft tissue injuries to claimant's neck and back, as well as bruising to his right elbow and shoulder, which Bazos opined were connected to the accident. The [*4]Court of Claims declined to credit the opinions of claimant's experts on those issues and on his future medical expenses, noting that they were, among other things, based upon the discredited account of claimant and opinion of McMahon. It instead relied upon the opinion of Bazos, who stated that claimant's causally-related injuries would have resolved within a few months of the accident and that the only subsequent medical treatment required to address them was right shoulder surgery that occurred in April 2014 and a course of postoperative physical therapy that concluded in July 2014. As for the loss of income related to the accident, the Court of Claims noted that claimant had a sporadic work history and that the income reported on his tax returns, which ranged from nothing to $28,000 in the years leading up to the accident, was just over $15,000 in 2013. The vocational analyst retained by defendant further opined that, even if claimant was no longer capable of working as a construction laborer, he could still earn up to $89,000 a year in one of several occupations that were within his physical capabilities and skill set. The Court of Claims considered the foregoing and, after reviewing the damage awards in comparable cases, determined that claimant was entitled to $15,000 in past lost earnings, $225,000 for past pain and suffering and no future damages of any kind. We cannot say, upon this record, that those amounts "deviated materially from reasonable compensation" (Teller v Anzano, 263 AD2d 647, 650 [1999]; see CPLR 5501 [c]; Coleman v Karimov, 173 AD3d 669, 671 [2019]; Richards v Fairfield, 127 AD3d 1290, 1291-1292 [2015]; Campo v Neary, 52 AD3d 1194, 1198 [2008]).
Claimant finally contends that the Court of Claims exhibited implicit bias against Asian Americans by noting that claimant was "Korean born" and that that bias was a factor in the court's decision to find claimant's testimony untrustworthy. We have carefully reviewed the record and find no basis for that contention. One of the issues in this trial was the degree to which claimant's proof of injuries at trial comported with his initial complaints to medical personnel on the day of the accident. Counsel for claimant noted in his opening statement that when claimant presented at the hospital on the day of the accident, "there [was] no Korean interpreter available," and he asked claimant on direct examination, "[D]id they have a Korean interpreter for you at Albany Medical Center?" Counsel further wrote in his posttrial memorandum of law that "[c]laimant is a native of Korea and speaks a limited amount of English." While it was fair for claimant's counsel to make the comments he did to urge that any inconsistency in claimant's account of his injuries was the result of a language barrier, in this context, there was nothing untoward in the Court of Claims stating that claimant was Korean born and relied upon a Korean translator at a number of medical visits subsequent to the [*5]accident and at the trial, and such did not reflect prejudice against claimant's race or national origin (see Rules Governing Judicial Conduct [22 NYCRR] § 100.3 [B] [4]). The Court of Claims also made no reference to claimant's national origin or his utilization of a translator in its recitation of the reasons why it declined to credit his testimony, and that assessment, while one that claimant disagreed with, "does not demonstrate either bias or misconduct" (Center for Jud. Accountability, Inc. v Cuomo, 167 AD3d 1406, 1408 [2018], appeal dismissed 33 NY3d 993 [2019], lv denied 34 NY3d 961 [2019]). Claimant's remaining contentions have been examined and lack merit.
Clark, Pritzker and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: The parties stipulated that claimant had incurred past medical expenses of $221,447.16, and that aspect of the damages award is not at issue.

Footnote 2: We note that, when claimant complained about his left wrist during his second visit to the hospital, "he felt like he had decreased range of motion" but was able to move it in all directions. His grip strength was weaker in the left hand as compared to the right, but no swelling was noted, and claimant refused to submit to range of motion testing, strength testing, or an X ray to diagnose the cause of his left wrist discomfort. Claimant later consulted with a pain management specialist who, in August 2013, conducted a radiographic examination of his left wrist that revealed no fracture or dislocation. It was only in September 2013 that an MRI of the left wrist found that he had a fractured scaphoid bone, for which he underwent surgery in June 2014.

Footnote 3: We decline claimant's invitation to take judicial notice of documents from the related workers' compensation claim against his employer, as he did not provide those records to the Court of Claims and offers no excuse for that failure (see Winkler v Halmar Intl., LLC, 199 AD3d 598, 599 [2021]; Matter of Colavito v New York State Comptroller, 130 AD3d 1221, 1222 [2015]). In any event, the factual findings in the workers' compensation proceeding would not be binding upon defendant absent any indication that it was a party in the workers' compensation proceeding (see Callaghan v Point at Saranac Lake, Inc., 83 AD3d 1177, 1179 [2011]; Sleasman v Sherwood, 212 AD2d 868, 870 [1995]).