■ ALTERNATIVES FEDERAL CREDIT UNION, Appellant, v OL-BIOS, LLC, Respondent. [787 NYS2d 508]—

Spain, J. Appeal from a judgment of the Supreme Court (Mulvey, J.), entered January 23, 2004 in Tompkins County, upon a decision of the court in favor of defendant.

Defendant sold plaintiff a parcel of real property located at 125 N. Fulton Street in the City of Ithaca, Tompkins County. The March 1999 contract of sale referenced a phase I environmental site assessment (hereinafter ESA) of the property. Completed in December 1998, the ESA identified the possibility that an underground fuel tank was located on the southeast portion of the property, near the end of a then-existing concrete driveway. With this potential in mind, the parties reached the following agreement, to survive the closing: "In the event that the underground tank identified in phase 1 of the [ESA] referred

to above requires remediation or removal, then [defendant] will be responsible for securing and paying for such remediation or removal."

Just prior to the April 1999 closing, defendant had the property excavated in search of the underground storage tank and found none. According to the deposition testimony of defendant's representative, John Abel, the search identified an apparent location where a tank had been removed years before, consistent with the location identified in the ESA. In August 2000, during plaintiff's excavation of the site in preparation for the construction of an office building, soil contaminated by a petroleum product was discovered in the same general area that had been identified as the possible tank location.

After plaintiff notified defendant of the contamination, defendant immediately took charge of the remediation efforts, accepting bids for removal of the contaminated soil and asking plaintiff to obtain a bid from the contractor it had hired to prepare the property for construction, Summit Environmental. On consensus by the parties, the bid from Summit was accepted and Summit completed the soil removal. Summit submitted a bill for its services to plaintiff for $93,563.41. Plaintiff then hired another contractor to refill the hole left by the soil removal at an additional expense of $22,987. Plaintiff promptly paid the bills in full and demanded reimbursement from defendant. Defendant delayed payment, citing concerns about Summit's performance and questioning the reasonableness of the cost. Eventually, defendant refused to pay on the ground that, because no tank was discovered on the property, their obligation to pay for remediation was not triggered. Plaintiff then commenced this action. Following a nonjury trial, Supreme Court found for defendant and dismissed the complaint. On plaintiff's appeal, we now reverse.

"In this nonjury case, we independently review the weight of the evidence presented and grant judgment warranted by the record giving due deference to the trial court's determinations regarding witness credibility" (*Riggs v Benning,* 290 AD2d 716, 717 [2002] [citations omitted]). Here, our analysis begins with a question of contract interpretation, a matter to be resolved by the court in the first instance (*see Hendrix v Hendrix,* 2 AD3d 1257, 1258 [2003]). "To determine the intent of the parties, the entire document is examined, and matters outside the document are considered only if the provision in question is determined as a matter of law to be ambiguous" (*id.* at 1258 [citations omitted]).

While we agree with defendant that the contract unambigu-

ously links defendant's liability to the tank identified in the ESA, we further find that the language, "[i]n the event that the underground tank . . . requires remediation *or* removal" (emphasis added), clearly extends defendant's liability beyond removal of the actual tank to any contamination caused by said tank. We do find an ambiguity, however, as to whether defendant is liable for remediation where, as here, the tank had been removed prior to the sale of the property. To resolve this ambiguity, we look to extrinsic evidence relevant to the parties intent (*see Greenfield v Philles Records,* 98 NY2d 562, 569 [2002]; *Guntert v Daniels,* 240 AD2d 789, 790 [1997]). A " 'determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence' " (*Dudick v Gulyas,* 4 AD3d 604, 606 [2004], quoting *Hartford Acc. & Indem. Co. v Wesolowski,* 33 NY2d 169, 172 [1973]). Also, "where an ambiguity is present in a contract . . . the subsequent conduct of the parties [may] be used to indicate their intent" (*Estate of Hatch v NYCO Mins.,* 245 AD2d 746, 749 [1997]).

Here, defendant learned that the tank was not on the property prior to closing yet, when the contamination was discovered following the closing, defendant immediately assumed responsibility for coordinating and overseeing the cleanup. Defendant told plaintiff that defendant would reimburse plaintiff and, prior to the completion of the work, no dispute existed regarding defendant's obligation to pay for the work.

We also consider several letters introduced into evidence in which defendant openly acknowledged its responsibility for indemnifying plaintiff for the cost of the remediation effort. Defendant claims that these letters are not admissible to demonstrate liability because they were overtures toward a settlement and, thus, protected communications under CPLR 4547. To the contrary, the letters state defendant's position on the ultimate issue of liability without proffering any offer of settlement. The letters were written to explain defendant's delay in reimbursing plaintiff and, at the time the letters were drafted, defendant had accepted responsibility for the cost of cleanup, and was contesting only the amount of those costs. Accordingly, the letters were not offers to settle or compromise any claim and, with respect to the issue of liability, they represent predispute communications which are outside the scope of CPLR 4547 (*see* Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 4547, at 151 [Cumulative Pocket Part 2005]; *Burnside v Foglia,* 208 AD2d 1085, 1086 [1994]).

In addition, the ESA put the contracting parties on notice

that there was a strong possibility that the tank may have been removed prior to the time the contract was made. The ESA states that a 1961 insurance map documented the tank, but in a 1971 map the tank was crossed out. Still, the parties agreed that defendant would be liable should the tank require "remediation *or* removal" (emphasis added) without limiting such liability in the likely event that the tank had already been removed. On our independent review of "the probative weight of the evidence and the inferences to be drawn therefrom," we conclude that defendant is liable for the reasonable expense of cleaning up the oil contamination found on the property (*Struble v Chapman,* 274 AD2d 922, 924 [2000]; *see Greenfield v Philles Records, supra* at 569-570; *Blank v Blank,* 256 AD2d 688, 693-694 [1998]).

On appeal, defendant claims that liability does not attach because no evidence exists that the tank *ever* existed. We disagree. In our view, the parties' agreement contemplating the possible existence of an underground petroleum tank, defendant's admission that its search for the tank indicated that a tank had been removed at some point and the fact that petroleum contamination was found in the same location on the site provide sufficient evidence to support a finding that the contamination at issue emanated from the tank originally identified in the ESA.

While plaintiff has demonstrated that it paid for the remediation, questions of fact exist as to whether defendant is obligated to indemnify plaintiff for the full amount. Defendant raises several objections, including the claim that plaintiff hindered its ability to dispute the bills by paying them without first consulting defendant. In light of the foregoing, we remit this matter to Supreme Court for a determination of plaintiff's damages (*see Scudder v Jack Hall Plumbing & Heating,* 302 AD2d 848, 851 [2003]).

Mercure, J.P., Mugglin and Lahtinen, JJ., concur. Ordered that the judgment is reversed, on the law and the facts, with costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.