◼ ELMIRA TEACHERS' ASSOCIATION, by its President, DOUGLAS S. MARTIN, et al., Respondents-Appellants, and ROBERT BAILEY et al., Respondents, v ELMIRA CITY SCHOOL DISTRICT et al., Appellants-Respondents. (Action No. 1.) DONALD W. MORSE, Respondent, v ELMIRA CITY SCHOOL DISTRICT et al., Appellants. (Action No. 2.) [861 NYS2d 195]—

Cardona, P.J. Cross appeals from an order of the Supreme Court (Mulvey, J.), entered April 6, 2007 in Chemung County, which partially granted the motions of defendants in action Nos. 1 and 2 for summary judgment dismissing the complaints.

In February 2001, defendant Elmira City School District entered into a contract with Horizon Benefits Administration, Inc. to act as the third-party administrator of the District's retirement savings plan offered to employees under section 403 (b) of the Internal Revenue Code (26 USC). Although participation in the plan was voluntary, employees who chose to participate were required to enter into a salary reduction agreement (hereinafter SRA) with the District authorizing moneys to be deducted from their paychecks and transferred to a custodial

bank where the funds were then distributed to certain vendors of investment products selected by the participants. In addition to acting as the third-party administrator, Horizon acted as a vendor of investment products and provided an investment option, known as ChoicesUnlimited, to participants which gave them access to various mutual funds. On September 23, 2004, following an investigation by the Ohio Attorney General, Horizon's assets were frozen and the company was eventually liquidated. Unfortunately, those District employees who participated in the plan and elected to have their salary deductions deposited in Horizon's ChoicesUnlimited investment account lost money.

On December 20, 2004, a notice of claim was filed against the District, its Superintendent, its Board of Education and individual members of the Board by four individual plan participants who lost money, as well as plaintiff Elmira Teachers' Association (hereinafter ETA) and plaintiff Elmira Instructional Support Educational Association (hereinafter EISEA). On or about August 31, 2005, these four individuals, ETA and EISEA commenced an action (hereinafter referred to as action No. 1) against the foregoing parties, as well as the District's Assistant Superintendent for Management Services, alleging causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, negligent retention, negligent supervision and negligent misrepresentation. On or about September 20, 2005, an amended verified complaint in action No. 1 was served adding numerous other individual aggrieved plan participants as plaintiffs in the action.[1]

Meanwhile, on or about May 25, 2005, a second notice of claim had been filed against the District by plaintiff Donald W. Morse, another aggrieved plan participant. This was followed, on December 28, 2005, by the commencement of an action by Morse (hereinafter referred to as action No. 2) against the District, its Superintendent, its Assistant Superintendent for Management Services and its Board of Education alleging causes of action similar to those asserted in action No. 1 for breach of contract and breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty and negligence.

In September 2005, plaintiffs in action No. 1 moved for permission to file a late notice of claim to cure alleged defects in the December 2004 notice of claim and to include additional

---

1. It should be noted that Thomas Milliken, who was originally named as a plaintiff in action No. 1, was not named in the amended verified complaint.

plaintiffs named in the action.[2] The motion was adjourned pending the removal of the case to federal court and was subsequently considered when the case was remanded to state court. At that time, defendants in action Nos. 1 and 2 moved for summary judgment dismissing the complaints in both actions. Supreme Court, among other things, dismissed all of plaintiffs' causes of action except for those alleging negligent supervision and negligent misrepresentation. The court further ruled that the notices of claim adequately complied with General Municipal Law § 50-e (2) and § 50-i (1) (b), and declined to dismiss ETA and EISEA as plaintiffs in action No. 1 for lack of standing. Defendants in both actions appeal and only plaintiffs in action No. 1 cross-appeal.[3]

Initially, defendants in actions Nos. 1 and 2 contend that plaintiffs are precluded by certain provisions of the SRA, which they signed when they became plan participants, from asserting any claims against them for losses resulting from Horizon's activities. In construing the provisions of the SRA, we are guided by basic principles of contract interpretation which instruct that a contract should be construed to give effect to the parties' intent as gleaned from the four corners of the document itself, provided that its terms are clear and unambiguous (*see Hawkins Home Groups v Southern Energy Homes*, 276 AD2d 866, 867 [2000]; *Unisys Corp. v Hercules Inc.*, 224 AD2d 365, 367 [1996]). In addition, a contract should be interpreted according to its plain and ordinary meaning (*see Town of Wawarsing v Camp, Dresser & McKee, Inc.*, 49 AD3d 1100, 1102 [2008]; *State of New York v Capital Mut. Ins. Co.*, 213 AD2d 888, 890 [1995], *lv denied* 86 NY2d 702 [1995]) and in such a manner as to give effect to all of its provisions (*see Melino v National Grange Mut. Ins. Co.*, 213 AD2d 86, 88 [1995], *appeal dismissed* 87 NY2d 897 [1995]).

In support of their contention that plaintiffs' claims are barred, defendants rely on, among other things, the hold harmless provision contained in the SRA. It states that "[t]he Employee agrees that the Employer shall have no liability whatsoever for any loss suffered by the Employee with regard to his [or her] selection of an insurance company or mutual fund, or

---

**2.** Plaintiffs, in fact, filed three additional notices of claim in action No. 1 in September 2005.

**3.** In January 2008, subsequent to the entry of the order appealed from, Supreme Court issued an order granting a motion by certain individuals allowing them to intervene as plaintiffs in action No. 1. Although these parties have filed a respondents' brief to this Court, references to "plaintiffs" in the body of the decision refer to the original plaintiffs as named in the amended complaint.

the solvency of, operation of, or benefits provided by said insurance company or mutual fund company." The provision contains clear and unambiguous language and, by its terms, specifically relieves the District from liability for monetary losses sustained by plan participants due to the choice of an investment product that is unprofitable or even becomes insolvent.

In our view, the hold harmless provision was clearly intended to encompass a situation like the one at hand where the plan participants who lost money did so because they selected the ChoicesUnlimited investment option offered by Horizon in its capacity as a vendor of investment products. Significantly, there is no evidence that the plan participants who selected alternative investment options and deposited their money in funds offered by other vendors suffered losses as a result of Horizon's liquidation even though it was the overall plan administrator. In short, there is nothing to indicate that plaintiffs' losses were attributable to Horizon's activities while functioning as the plan administrator or to the District's failure to somehow monitor the same. While we are mindful that exculpatory clauses such as the hold harmless provision are disfavored by the law and subject to close scrutiny, we do not find that the provision at issue offends public policy or condones gross negligence or intentional wrongdoing (*see Banc of Am. Sec. LLC v Solow Bldg. Co. II, L.L.C.*, 47 AD3d 239, 243 [2007]). Accordingly, we conclude that the hold harmless provision is applicable and precludes plaintiffs from asserting causes of action against defendants arising from Horizon's ultimate liquidation. Therefore, defendants' motions should have been granted in their entirety and the complaints dismissed. In view of our disposition, we need not address the parties' contentions with respect to the sufficiency of the notices of claim or the standing of ETA and EISEA.

Mercure, Lahtinen, Kane and Kavanagh, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as partially denied defendants' motions for summary judgment; motions granted in their entirety and complaints dismissed; and, as so modified, affirmed.

