■ CAPITAL DISTRICT ENTERPRISES, LLC, et al., Appellants, v WINDSOR DEVELOPMENT OF ALBANY, INC., et al., Respondents. (Action No. 1.) WINDSOR DEVELOPMENT OF ALBANY, INC., Respondent, v CAPITAL DISTRICT ENTERPRISES, LLC, Appellant. (Action No. 2.) [861 NYS2d 816]—

Spain, J. Appeal from an order of the Supreme Court (Williams, J.), entered March 7, 2008 in Saratoga County, which, among other things, granted plaintiff's motion for summary judgment in action No. 2.

In August 2006, Windsor Development of Albany, Inc. and Capital District Enterprises, LLC entered into a contract for the purchase of a certain 40-acre parcel of undeveloped real property located in the Town of Malta, Saratoga County. Capital, as the buyer, planned to develop the property and, as such, the parties' contract contained provisions obligating Capital to undertake due diligence in the initiation of its project, making final site plan approval a condition precedent to Capital's obligation to close title, and requiring the transfer of title within 75 days of such approval, with the caveat that, should such approval not be obtained within one year after the date of the agreement (hereinafter the contingency date), Capital would have the right to extend the contingency date by 90 days by payment of an additional nonrefundable deposit.[1] The contract also included a purchase price clause, at dispute in the instant litigation, which reads in full: "The purchase price is as follows: $10,000 multiplied by the number of units authorized to be constructed in the Final Site Plan Approval (as hereinafter defined), provided at the time of closing there are no such approved units, the Purchase Price is $2,000,000. Notwithstanding the preceding sentence, in the event there are less than two hundred (200) units authorized to be constructed in the Final Site Plan Approval, the Purchase Price is $2,000,000. In the event that Purchaser closes without approved units and obtains Final Site Plan Approval for more than two hundred (200) units within five (5) years after the date of Closing, an additional payment of $10,000 multiplied by the number of units so authorized to be constructed in excess of two hundred (200) units shall be made. Such additional payment shall be made within ninety (90) days of receipt of such Final Site Plan Approval."

In July 2007, Capital informed Windsor that it was still actively pursuing final site plan approval and extended the contingency date by 90 days by payment of the required additional deposit. However, shortly before the anticipated closing in November 2007, a dispute arose regarding the calculation of

---

1. In November 2006, Windsor conveyed fee title of the property to Malta Land I LLC, which had been formed by Windsor for the purpose of acquiring the property. Malta is a named defendant in action No. 1.

the purchase price, namely, the parties disagreed as to whether hotel rooms and commercial space, in addition to residential space, were to be defined as "units" under the price clause.[2] Because of this dispute, Windsor refused to close as scheduled.

Subsequently, Capital assigned all of its rights and obligations under the contract to CDP Kelch, LLC and informed Windsor that CDP was ready, willing and able to perform the contract. Thereafter, Capital and CDP commenced action No. 1 against Windsor and Malta Land I LLC seeking, among other things, specific performance of the contract. In addition, Windsor commenced action No. 2 against Capital seeking a declaration that hotel and commercial space be considered as "units" under the price clause in the parties' contract or, in the alternative, that the contract be rescinded. In December 2007, Windsor moved for consolidation and summary judgment and Capital and CDP subsequently moved for the same relief. In March 2008, Supreme Court consolidated the actions and, finding that the parties had failed to adequately define the term "units" in their contract, held that the parties never came to a meeting of the minds and, thus, declared the contract null and void. Capital and CDP now appeal.

We disagree with the initial contention of Capital and CDP that judicial construction of the term "units" as used in the parties' contract is not ripe for review. A request for declaratory relief is premature if the future event is beyond the control of the parties and may never take place, but a claim is justiciable if it is likely that the future contingency will occur (*see Cuomo v Long Is. Light. Co.*, 71 NY2d 349, 354 [1988]; *New York Pub. Interest Research Group v Carey*, 42 NY2d 527, 531 [1977]; *Police Benevolent Assn. of N.Y. State Troopers, Inc. v New York State Div. of State Police*, 40 AD3d 1350, 1352 [2007], *appeal dismissed and lv denied* 9 NY3d 942 [2007]; *Saratoga County Chamber of Commerce v Pataki*, 275 AD2d 145, 158 [2000]). A determination may be made in the sound discretion of the trial court where "a genuine dispute may arise before any breach or violation has occurred and before there is any need or right to resort to coercive measures" (*New York Pub. Interest Research Group v Carey*, 42 NY2d at 530; *see Clarity Connect, Inc. v AT&T Corp.*, 15 AD3d 767, 767 [2005]).

Here, Capital and CDP have admittedly undertaken the process of seeking site plan approval for a mixed-use development on the property, which includes both hotel and commercial of-

---

**2.** Windsor contends that, at the time of the contract, Capital planned to only construct residential units but that, subsequently, Capital filed a mixed-use conceptual plan that included town houses, a hotel and office buildings.

fice space. To that end, they have apparently expended significant sums in retaining architects and engineers, and have made at least one presentation to the Town of Malta Planning Board. As such, we find that there will likely be a need to interpret the term "units" contained in the parties' contract and, as such, the issue is ripe for review.

Turning to Supreme Court's grant of summary judgment in favor of Windsor, while the doctrine of definiteness provides that a court cannot enforce a contract if it cannot determine to what the parties have agreed, the doctrine has not been applied rigidly, and an imperfect expression of terms should not be used to defeat the underlying expectations of the parties where they have otherwise manifested an intent to be bound (see *Matter of 166 Mamaroneck Ave. Corp. v 151 E. Post Rd. Corp.*, 78 NY2d 88, 91 [1991]; *Cobble Hill Nursing Home v Henry & Warren Corp.*, 74 NY2d 475, 483 [1989], *cert denied* 498 US 816 [1990]; *Subcarrier Communications, Inc. v Satra Realty, LLC*, 11 AD3d 829, 830-831 [2004]; *F & K Supply v Willowbrook Dev. Co.*, 288 AD2d 713, 715 [2001]). As such, rescission of a contract on the basis of indefiniteness should be a last resort (see *Matter of 166 Mamaroneck Ave. Corp. v 151 E. Post Rd. Corp.*, 78 NY2d at 91; *Cobble Hill Nursing Home v Henry & Warren Corp.*, 74 NY2d at 483; see also *Non-Linear Trading Co. v Braddis Assoc.*, 243 AD2d 107, 114 [1998]).

Thus, in determining the obligations of parties to a contract, a court must determine, as a matter of law, whether provisions of the contract are ambiguous, such that they lack a definite and precise meaning and provide a reasonable basis for a difference of opinion (see *Stevens & Thompson Paper Co., Inc. v Niagara Mohawk Power Corp.*, 49 AD3d 1011, 1012 [2008]; *Shook v Blue Stores Corp.*, 30 AD3d 811, 812 [2006]; *Pozament Corp. v AES Westover, LLC*, 27 AD3d 1000, 1001 [2006]). Where an ambiguity is found, extrinsic evidence may then be considered and a determination as to the meaning of the contract rendered by the trier of fact (see *CV Holdings, LLC v Artisan Advisors, LLC*, 40 AD3d 1322, 1323 [2007]; *Pozament Corp. v AES Westover, LLC*, 27 AD3d at 1001; *Alternatives Fed. Credit Union v Olbios, LLC*, 14 AD3d 779, 781 [2005]). A price term, for example, may be sufficiently definite if it can be objectively determined by reference to commercial practice or trade usage, or by subsequent conduct of the parties (see *Cobble Hill Nursing Home v Henry & Warren Corp.*, 74 NY2d at 483; *Alternatives Fed. Credit Union v Olbios, LLC*, 14 AD3d at 781; *Village of Lansing v Triphammer Dev. Co.*, 193 AD2d 919, 920-921 [1993]).

Although the meaning of the term "units" in the price clause

is clearly ambiguous, we find, nonetheless, that the parties manifested an intent to be bound by the land purchase contract. Where the total purchase price of the parcel was clearly contemplated to be dependent upon the success of Capital in achieving final site plan approval for a large-scale mixed-use development, we find questions of fact remain as to what the parties meant in employing the term "units." Notably, Capital and CDP do not directly dispute Windsor's position that the term "units" refers to more than just residential space, but instead maintain that there is yet no need to define such term. Thus, it cannot be said, as a matter of law, that there was no meeting of the minds on the issue. Inasmuch as the extrinsic evidence in this record is insufficient to provide a resolution of the parties' intent, Windsor has failed to carry its burden on the motion to establish that there was no genuine issue of fact as to the meaning of the term "units." Likewise Capital and CDP have failed to establish that such term would not be capable of definition with the introduction of extrinsic evidence. For these reasons, we need to modify Supreme Court's order. The determination of the meaning of the term "units" should be made by the trier of fact (see Shook v Blue Stores Corp., 30 AD3d at 812-813; Pozament Corp. v AES Westover, LLC, 27 AD3d at 1002; CV Holdings, LLC v Artisan Advisors, LLC, 9 AD3d 654, 657 [2004]).

We have examined the parties' remaining contentions and, in light of our holding, find them to be either academic or without merit.

Mercure, J.P., Rose, Kavanagh and Stein, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted plaintiff's motion for summary judgment in action No. 2; motion denied; and, as so modified, affirmed.

