■ Richard Williams, on Behalf of Himself and All Other Retired Endicott Police Officers Similarly Situated, Respondent-Appellant, v Village of Endicott, Appellant-Respondent. [936 NYS2d 759]—

Peters, J.

"In determining the obligations of parties to a contract, courts will first look to the express contract language used to give effect to the intention of the parties, and where the language of a contract is clear and unambiguous, the court will construe and discern that intent from the document itself as a matter of law" (*Shook v Blue Stores Corp.*, 30 AD3d 811, 812 [2006] [internal

quotation marks and citations omitted]; *see Angelino v Michael Freedus, D.D.S., P.C.*, 69 AD3d 1203, 1205-1206 [2010]; *Bauersfeld v Board of Educ. of Morrisville-Eaton Cent. School Dist.*, 46 AD3d 1003, 1005 [2007], *lv denied* 10 NY3d 704 [2008]). Whether a contract is ambiguous is a question of law to be resolved by the court (*see W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]; *Stevens & Thompson Paper Co., Inc. v Niagara Mohawk Power Corp.*, 49 AD3d 1011, 1012 [2008]; *CV Holdings, LLC v Artisan Advisors, LLC*, 9 AD3d 654, 656 [2004]). "A contract is ambiguous if the language used lacks a definite and precise meaning, and there is a reasonable basis for a difference of opinion" (*Pozament Corp. v AES Westover, LLC*, 27 AD3d 1000, 1001 [2006] [citations omitted]; *see Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]; *CV Holdings, LLC v Artisan Advisors, LLC*, 9 AD3d at 656).

We find an ambiguity as to whether Medicare Part B coverage is a component of the "medical coverage and hospital coverage" that defendant agreed to provide to retirees under the CBA. Notably, the CBA does not define what is encompassed by "medical coverage and hospital coverage" and is silent with respect to the treatment of costs associated with a federal medical insurance plan, such as Medicare. The provision in the CBA requiring defendant to provide "medical coverage and hospital coverage" with benefits "of a value at least equivalent to those presently in force" could be interpreted to mean, as defendant suggests, that subsequent to his retirement plaintiff is entitled to continued private health insurance coverage from defendant having, at a minimum, the same terms and conditions as those in effect at the time of his retirement. In that regard, the parties do not dispute that the health insurance plan provided by defendant to plaintiff at the time of his retirement contains the same terms as that presently in effect, including the coordination of benefits provision that provides that the insurance becomes secondary upon plaintiff's eligibility for Medicare. Thus, under this reading, defendant has fulfilled its obligation under the CBA to provide health insurance coverage with benefits "of a value at least equivalent" to those in force at the time of plaintiff's retirement, and would have no obligation to cover the costs associated with plaintiff's Medicare Part B coverage.

On the other hand, the operative language could be read to require defendant to continue to provide and pay for a defined level of health insurance benefits—i.e., those in place at the time of retirement—without resort to any particular insurance plan or provider, subject to plaintiff's $500/$200 annual contri-

bution. There is no dispute that, upon plaintiff's eligibility for Medicare Part B, the health insurance coverage provided by defendant became secondary to Medicare Part B, such that it would no longer cover any expenses or benefits that would be covered under Medicare. Therefore, under this interpretation, which is advocated by plaintiff, the health insurance coverage provided by defendant afforded him benefits of a lesser value than those in force at the time of his retirement. In order to maintain the level of benefits "of a value at least equivalent to those . . . in force" at the time of his retirement, plaintiff was required to enroll and participate in Medicare Part B, which carried with it a premium. Consequently, plaintiff must now pay more than the $500/$200 annual contribution limit set forth in the CBA in order to sustain benefits equivalent to those he was receiving at the time of his retirement. Inasmuch as the CBA limits plaintiff's contribution for equivalent health insurance coverage to $500/$200 per year, defendant would be obligated, under this reading of the language of the CBA, to cover the costs associated with his Medicare Part B coverage.

In our view, the parties have advanced two equally plausible and reasonable interpretations of the CBA provision in question, thereby evidencing an ambiguity that requires consideration of evidence outside the four corners of the CBA relevant to the parties' intent (see *Seymour v Northline Utils., LLC*, 79 AD3d 1386, 1388 [2010]; *Alternatives Fed. Credit Union v Olbios, LLC*, 14 AD3d 779, 781 [2005]; *CV Holdings, LLC v Artisan Advisors, LLC*, 9 AD3d at 656). As the scant extrinsic evidence contained in the record does not dispositively establish the scope of health insurance coverage contemplated by the parties, the matter is not amenable to summary disposition (see *Capital Dist. Enters., LLC v Windsor Dev. of Albany, Inc.*, 53 AD3d 767, 771 [2008]; *Shook v Blue Stores Corp.*, 30 AD3d at 812-813).

Finally, inasmuch as our finding of ambiguity is not affected by consideration of the facts presented by defendant on its motion to renew, defendant was not entitled to renewal (see CPLR 2221 [e] [2]; *Matter of Cohen Swados Wright Hanifin Bradford & Brett v Frank R. Bayger, P.C.*, 269 AD2d 739, 742 [2000]; *Curry v Nocket*, 104 AD2d 435, 436 [1984], lv denied 64 NY2d 606 [1985]; *Rose v La Joux*, 93 AD2d 817, 818 [1983]).

Mercure, A.P.J., Rose, Lahtinen and Garry, JJ., concur. Ordered that the orders are affirmed, without costs.