Order, Supreme Court, New York County (Eileen Bransten, J.), entered June 29, 2010 (index 601265/07), which denied the parties’ motions for summary judgment, unanimously modified, on the law, to grant defendants’ motion as to the causes of action for breach of fiduciary duty, fraud, negligent misrepresentation and aiding and abetting breach of fiduciary duty and fraud, and to grant plaintiffs motion for summary judgment on the causes of action for breach of contract, and otherwise affirmed, without costs. Order, same court and Justice, entered March 9, 2011 (index 600424/08), which to the extent appealed, *604 denied plaintiff’s motion for summary judgment on the complaint and dismissed the counterclaim, and granted plaintiffs motion to strike evidence, unanimously modified, on the law, to declare, upon the counterclaim, that nominal defendant 1879 Hall, LLC was not dissolved, and to deny plaintiffs motion to strike a portion of defendants’ summary judgment evidence as inadmissible settlement communications, and otherwise affirmed, without costs.
In these two actions arising from a joint venture, the dispute between the parties is governed by a limited liability company (LLC) agreement which specifies that Delaware law applies. Accordingly, the motion court properly applied Delaware law.
In the action for breach of contract, breach of fiduciary duty and related business torts alleging that defendants usurped a joint venture opportunity by trading in securities for their own account (index 601265/07), the tort causes of action should have been dismissed as duplicative of the breach of contract causes of action. Plaintiffs claim that Chelonian made false representations in its books of account by failing to disclose purchases of $108,093,998 face amount of Federal Mogul Corporation (FMO) bonds which it had made without notifying plaintiff, are allegations of breach of the parties’ agreement. Likewise, the fiduciary claims are based on breach of the agreement (see Solow v Aspect Resources, LLC, 2004 WL 2694916, *4, 2004 Del Ch LEXIS 151, *17-19 [Del Ch 2004] [“Because of the primacy of contract law over fiduciary law, if the duty sought to be enforced arises from the parties’ contractual relationship, a contractual claim will preclude a fiduciary claim”]; see also Gale v Bershad, 1998 WL 118022, 1998 Del Ch LEXIS 37 [Del Ch 1998] [if the duty sought to be enforced arises out of the parties’ contractual, as opposed to their fiduciary relationship, that would preclude any fiduciary claim based on the same conduct]). The remaining tort claims for negligent representation and fraud, under the facts alleged here, amount to an unjustified breach of contract, “and should be remedied through contract law and not through tort law” (Tenneco Auto. Inc. v El Paso Corp., 2007 WL 92621, *6, 2007 Del Ch LEXIS 4, *27 [Del Ch 2007]; see also CPM Indus., Inc. v ICI Americas, Inc., 1990 WL 28574, 1990 Del Super LEXIS 88 [1990]).
Plaintiff’s motion for summary judgment on the breach of contract claims should have been granted. The motion court found an issue of fact as to whether the agreement, which required defendants to issue a capital call each time it intended to purchase the bonds, had been modified by the parties. We find that the record demonstrates that the agreement was, to *605 some extent, modified by the course of conduct of the parties, and that there is no triable issue of fact regarding defendants’ assertion that the agreement was modified by a course of conduct where business was conducted solely on a verbal basis.
In some instances, rather than using the written capital call as the form of advance notice, the parties exchanged e-mails that set forth an intention to purchase, and the other party’s response as to whether it opted to participate (the LLC Agreement contained a clause requiring plaintiff to provide written notice to defendants when it initiated an FMO trade, so that the party initiating the trade was to notify the other in writing). In other instances, one party would memorialize in an e-mail a discussion that occurred regarding a purchase, and the other’s decision on participation. This conduct took place in 41 trades that are not the subject of this litigation.
There are 18 trades for which plaintiff claims it received no notice from defendants, and for which defendants maintain they provided verbal notice and received a verbal response. Because defendants assert that the agreement requiring notice by written capital call was modified by a course of conduct of mere verbal notice and response, it is their burden to prove this modification by clear and convincing evidence (see Eureka VIII LLC, v Niagara Falls Holding LLC, 899 A2d 95, 109 [Del Ch 2006]).
However, defendants have failed to meet even the lesser burden of a preponderance of the evidence. While defendants’ representative Intrieri avers that he would either call or e-mail plaintiffs representatives, and that they would respond either verbally or by e-mail, defendants have provided no notations or other record that these conversations took place and that plaintiff provided a verbal notification as to whether it chose to participate. In contrast, in numerous instances not at issue here, when one party opted either to participate, or not to participate in a purchase initiated by the other, there are e-mails confirming that decision.*
Defendants argue that the agreement does not require them to keep any notations or records of verbal notification. This *606 argument misses the point because Intrieri’s conclusory statement that the parties agreed to conduct business verbally is insufficient to meet the burden of proof that the agreement was modified by this particular course of conduct. Notably, defendants do not point to any transaction in which plaintiff participated but for which there is no e-mail confirmation — i.e., that mere verbal notification of participation was given. Nor can Intrieri recall the specifics of any transaction, including any of the trades for which he claims he provided verbal notice but for which plaintiff verbally declined to participate. Thus, plaintiff has met its burden of proving that it did not receive notice required by either the agreement, or the modification of the agreement established by the parties’ course of conduct, and is accordingly entitled to summary judgment on its breach of contract causes of action.
In the action alleging usurpation of the limited liability company’s opportunity to participate in the exercise of an option to purchase the reorganized bankrupt’s stock, and an individual claim alleging denial of that opportunity to the company’s minority member (index 600424/08), the motion court correctly found issues of fact, including whether defendants failed to offer plaintiff the chance to participate in the options on the same terms as defendants and whether plaintiff was willing and able to pursue the options, including the $100 million loan provision.
Furthermore, the court properly rejected defendants’ argument that the LLC had no interest or expectancy in the options in light of the December 2005 Consent Agreement. That agreement, while memorializing the parties’ agreement that no additional trades in FMO securities and claims would be closed in the company, also provided that “all proceeds of any kind or character whatsoever received related to the ownership of FMO [securities and [cjlaims . . . shall be deemed to have been received by 1879 Hall, LLC” and that the parties’ rights and obligations “shall continue in full force and effect as if all FMO Securities and Claims were held by 1879 Hall, LLC.” These provisions demonstrate that the parties’ LLC had an economic interest in the options.
While the interpretation of the LLC Agreement is governed by Delaware law, the motion to strike evidence is subject to New York law (see CPLR 4547). The court erred in granting plaintiff’s motion to strike from the record, as a settlement communication, an exchange of e-mails between defendants’ counsel and plaintiff’s counsel regarding participation in the options and a draft agreement prepared by plaintiff. Neither the e-mail nor the draft presented any offer or acceptance of a “compromise.”
*607 Plaintiffs counsel’s inclusion of language in the draft that it is “in the context of settlement” does not make it a settlement document. Rather, the draft was an expression of plaintiffs position that defendants were obligated to allow plaintiff to participate in the options; defendants’ responsive e-mail set forth defendants’ position that plaintiff’s draft agreement was only-preserving plaintiffs rights but not defendants’, and that in order to go forward, plaintiff would have to acknowledge its willingness to put up its share of the $100 million loan (see Alternatives Fed. Credit Union v Olbios, LLC, 14 AD3d 779, 781 [2005] [letters stating defendant’s position without any proffer of settlement are admissible]; see also Java Enters., Inc. v Loeb, Block & Partners LLP, 48 AD3d 383, 384 [2008] [“e-mail is not inadmissible under CPLR 4547, which applies only to offers ‘to compromise a claim which is disputed’ ”]).
It is undisputed that the conditions for dissolution in section 18.1.4 of the LLC agreement were not satisfied. However, rather than dismiss defendants’ counterclaim for a declaration that 1879 Hall LLC was dissolved, we grant plaintiff summary judgment on this issue and declare in its favor (see Lanza v Wagner, 11 NY2d 317, 334 [1962], appeal dismissed 371 US 74 [1962], cert denied 371 US 901 [1962] [error to dismiss complaint for declaratory judgment where one party not entitled to declaration; judgment declaring in favor of other party directed]).
We have considered the parties’ remaining contentions in support of affirmative relief and find them unavailing. Concur— Mazzarelli, J.P., Andrias, Acosta and Abdus-Salaam, JJ.

 For example, in an illuminating e-mail exchange, plaintiffs representative Pacholder sent an e-mail to Intrieri, with a copy to her supervisor, stating that pursuant to Section 8 of the LLC Agreement, plaintiff has chosen to not contribute its share of the Capital Call for a particular FMO. The supervisor’s e-mail response was “this is very cold . . . make sure you talk to him and give him warm and cozy feeling,” to which Pacholder responded “I did — spoke w/him in person first-just sent the e-mail (per his request) afterwards” (emphasis added).