■ ZINTER HANDLING, INC., Appellant-Respondent, v GENERAL ELECTRIC COMPANY, Respondent, and J.C. MacELROY COMPANY, INC., et al., Respondents-Appellants. [956 NYS2d 626]—

Egan Jr., J.

In May 2004, plaintiff commenced an action in the United States District Court for the Northern District of New York against, among others, GE, JCM and JCM's then president,

Bart Spota. The crux of plaintiff's claim was that GE misappropriated and/or shared certain of plaintiff's designs—namely, the "new breed" and "high temperature" bridge crane designs—and, in so doing, violated the Lanham Act (*see* 15 USC § 1125). District Court (Sharpe, J.) granted motions by GE, JCM and Spota for summary judgment on the Lanham Act claim, finding that, pursuant to the terms of the underlying purchase orders between plaintiff and GE, GE owned the drawings and information at issue and, therefore, could use or disseminate such materials as it saw fit. District Court also declined to exercise supplemental jurisdiction over plaintiff's related state law claims, thereby disposing of the balance of the complaint.

Plaintiff appealed to the Second Circuit Court of Appeals and, while that appeal was pending, commenced this action in Supreme Court asserting state law claims arising out of the same transactions (*see* CPLR 205 [a]). At oral argument before the Second Circuit, plaintiff withdrew its Lanham Act claim, thus divesting the court of direct federal jurisdiction. The Second Circuit then vacated District Court's award of summary judgment on that claim and dismissed plaintiff's remaining causes of action without prejudice to asserting them in state court.

Plaintiff thereafter amended its complaint in this action to allege six causes of action against GE (unfair competition, conversion, defamation, tortious interference with prospective business relations and two breach of contract claims), five causes of action against JCM (unfair competition, tortious interference with prospective business relations, conversion, defamation and injurious falsehood) and two causes of action against Spota's estate (defamation and injurious falsehood).[1] Following joinder of issue and discovery, defendants moved for summary judgment dismissing the amended complaint. Supreme Court granted GE's motion in its entirety and partially granted the motions brought by JCM and Spota's estate, leaving intact only a portion of the tortious interference cause of action against JCM, as well as the defamation and injurious falsehood causes of action against JCM and Spota's estate. Plaintiff, as so limited by its brief, appeals and JCM and Spota's estate cross-appeal.[2]

1. Spota died in December 2008 and his son was appointed as his representative in this action.

2. Plaintiff does not challenge the dismissal of its conversion, defamation and tortious interference with prospective business relations causes of action as to GE, nor does it contest the dismissal of its conversion claim against JCM.

Plaintiff initially contends that Supreme Court erred in granting GE's motion for summary judgment dismissing its breach of contract claims as there is, at the very least, a question of fact as to which entity owned the drawings and/or specifications at issue.[3] We disagree.

In ascertaining the respective obligations of the parties to a contract, we first must look to the actual language employed (*see Williams v Village of Endicott*, 91 AD3d 1160, 1161 [2012]) and, in so doing, are guided by the "familiar and eminently sensible proposition . . . that, when [the] parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms" (*W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]; *accord Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470, 475 [2004]). Whether an ambiguity exists in a written agreement is a question of law for a court to decide after reading the document "as a whole to determine its purpose and intent" (*W.W.W. Assoc. v Giancontieri*, 77 NY2d at 162; *accord Wiggins v Kopko*, 94 AD3d 1268, 1269 [2012]; *see Currier, McCabe & Assoc., Inc. v Maher*, 75 AD3d 889, 890-891 [2010]). "An ambiguity will be found only where reasonable minds could differ as to what was intended by the parties" (*Wiggins v Kopko*, 94 AD3d at 1269 [citations omitted]), and "provisions in a contract are not ambiguous merely because the parties interpret them differently" (*Mount Vernon Fire Ins. Co. v Creative Hous.*, 88 NY2d 347, 352 [1996]; *accord Currier, McCabe & Assoc., Inc. v Maher*, 75 AD3d at 891).

Here, as noted previously, each crane sold by plaintiff to GE originated with a GE purchase order and, in conjunction therewith, plaintiff would prepare a corresponding design drawing. Each drawing, in turn, contained an "approval box" that included the following language: "this drawing shall not be reproduced in part or in whole or used in any way without the

---

**3.** To the extent that plaintiff argues that the law of the case doctrine governs this issue, a review of the Second Circuit's summary order dismissing plaintiff's state law claims without prejudice reveals that there was no actual determination made regarding the ownership of the drawings; hence, there was no finding by which Supreme Court was to abide (*see generally Matter of Giaquinto v Commissioner of the N.Y. State Dept. of Health*, 91 AD3d 1224, 1226 [2012]). Additionally, to the extent that plaintiff and GE debate the source of plaintiff's breach of contract claims (the breach of ongoing purchase orders versus the breach of a discrete, identifiable agreement) and, in turn, the appropriate statute of limitations to be applied thereto, we agree—for the reasons that follow—that Supreme Court properly dismissed such claims on the merits. Accordingly, we see no need to parse out and ascertain the timeliness of the individual components of plaintiff's claims in this regard.

written permission of [plaintiff]."[4] Additionally, in February 2003, a GE engineer signed—at plaintiff's behest—a letter agreement authored by plaintiff's president, Scott Zinter, attesting to the confidential nature of the information related to the high temperature bridge crane. According to plaintiff, such documents establish that it retained ownership of the relevant drawings and design information related thereto and, therefore, GE breached its contract with plaintiff when, in 1999 (and thereafter), it reproduced and/or disseminated the new breed design to plaintiff's competitors, including JCM, without plaintiff's express written permission. Plaintiff similarly alleges that GE breached its contractual agreement with plaintiff in 2003 (and thereafter) when GE shared the functional specifications for the high temperature bridge crane with, among others, JCM.

The flaw in plaintiff's argument on this point is that the sale of each crane to GE was governed by certain standard terms and conditions of purchase, which—plaintiff acknowledges— were incorporated by reference into each of GE's purchase orders. Beginning in May 1998, and insofar as is relevant here, such terms and conditions provided that "[a]ny knowledge or information which [plaintiff] shall have disclosed or may hereafter disclose to [GE], and which in any way relates to the goods or services offered by this order . . . *shall not, unless otherwise specifically agreed to in writing by [GE], be deemed confidential or proprietary information, and shall be acquired by [GE], free from any restrictions (other than a claim for patent infringement)*" (emphasis added).[5] Those standard terms and conditions "[took] precedence over any alternative terms and conditions in any other document connected with [the subject] transaction unless such alternative terms and conditions [were] expressly incorporated by reference on the face of [the] [p]urchase [o]rder." Further, the underlying purchase order, together with any documents expressly incorporated by reference therein, were intended to be both "a final expression of [the parties'] [a]greement" and a "complete and exclusive statement of the terms of their [a]greement." Finally, with respect to the use of the approval box, the standard terms and conditions provided that "[u]nless otherwise specifically agreed in writing by [GE], any

4. This language was modified slightly in 1999 to provide that "this drawing shall not be reproduced in part or in whole or used in any way without written permission. Equipment design and concept is the exclusive property of [plaintiff]."

5. The record does not disclose the precise language employed by GE in this regard prior to May 1998. That issue need not detain us, however, as plaintiff's breach of contract claims are premised upon breaches alleged to have occurred after the subject language took effect.

check or approval of drawings by [GE] shall be for [s]eller's convenience and will not relieve [s]eller of its responsibility to meet all requirements of [the] order."

Zinter acknowledged at his examination before trial that neither the approval box language nor the 2003 letter agreement was expressly incorporated by reference into any of the applicable purchase orders and, upon giving effect to the plain and unambiguous language employed in the standard terms and conditions incorporated therein, two things become clear: (1) that the documents relied upon by plaintiff were neither intended to—nor did they in fact—modify or supplant the contractual terms governing plaintiff and GE's relationship, and (2) that GE owned the drawings, specifications and information at issue and, therefore, did not breach its agreement with plaintiff when it shared such materials with, among others, JCM. Accordingly, Supreme Court properly granted GE's motion for summary judgment dismissing plaintiff's breach of contract claims against it.[6]

Turning to the claims asserted against JCM, to the extent that plaintiff's unfair competition claim is premised upon a specific letter that Spota sent to GE in August 1999, such claim is barred by the applicable three-year statute of limitations (see CPLR 214 [4]; *Ullmannglass v Oneida, Ltd.*, 86 AD3d 827, 828 [2011]). Alternatively, to the extent that this claim stems from JCM's alleged ongoing use of such drawings/designs, this portion of the claim, although not time-barred, fails for the reasons already stated—namely, that GE owned the subject materials. Accordingly, Supreme Court properly granted summary judgment dismissing this cause of action as to JCM.[7]

We reach a similar conclusion with regard to plaintiff's claim for tortious interference with prospective business relations, which is established where one party either utilizes wrongful or unlawful means to secure an economic advantage over, or acts for the sole purpose of inflicting intentional harm upon, another (see *NBT Bancorp v Fleet/Norstar Fin. Group*, 215 AD2d 990, 990 [1995], *affd* 87 NY2d 614 [1996]). Plaintiff's claim against

---

**6.** We reach a similar conclusion regarding plaintiff's unfair competition claim against GE, which is nothing more than a restatement of plaintiff's breach of contract claims. Plaintiff failed to plead—and, in light of its concession on this point, could not prove—that it was in competition with GE for commercial benefit (see *Edelman v Starwood Capital Group, LLC*, 70 AD3d 246, 249 [2009], *lv denied* 14 NY3d 706 [2010]). Moreover, as should be obvious from our resolution of plaintiff's breach of contract claims, GE cannot misappropriate that which it already owns.

**7.** The balance of plaintiff's unfair competition claim is a reiteration of its defamation cause of action (see *infra*).

JCM is based upon (1) JCM's "wrongful" use of plaintiff's designs to obtain bridge crane orders from GE in 1999, and (2) JCM's allegedly defamatory statement, made in 2003, that plaintiff engaged in "price fixing and bid rigging." Again, our resolution of the ownership issue relative to the subject drawings and designs is fatal to the wrongful use portion of plaintiff's claim. As to the allegations of price fixing, this is merely a repetition of plaintiff's defamation cause of action (*see infra*) and, as such, should have been dismissed (*see Curren v Carbonic Sys., Inc.*, 58 AD3d 1104, 1109 [2009], citing *Demas v Levitsky*, 291 AD2d 653, 658 [2002], *lv dismissed* 98 NY2d 728 [2002]). Accordingly, JCM is entitled to dismissal of this cause of action in its entirety.

Finally, with respect to plaintiff's defamation and injurious falsehood causes of action, we cannot say that Supreme Court erred in denying the motion brought by JCM and Spota's estate for summary judgment dismissing these claims. Viewing the evidence in the light most favorable to the nonmoving party, as we must (*see U.W. Marx, Inc. v Koko Contr., Inc.*, 97 AD3d 893, 894 [2012]), we agree that questions of fact remain regarding, among other things, the availability of the qualified privilege asserted by JCM and Spota's estate (*see generally Curren v Carbonic Sys., Inc.*, 58 AD3d at 1106-1107). The parties' remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Peters, P.J., Rose, Malone Jr. and Stein, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied the motion of defendant J.C. MacElroy Company, Inc. for summary judgment dismissing the tortious interference with prospective business relations cause of action against it; motion granted to that extent and said cause of action dismissed against said defendant; and, as so modified, affirmed.