██ VECTRON INTERNATIONAL, INC., et al., Respondents, v CORNING OAK HOLDING, INC., et al., Appellants. [964 NYS2d 724]—

McCarthy, J. Appeal from an order of the Supreme Court (O'Shea, J.), entered May 1, 2012 in Chemung County, which, among other things, denied defendants' motion to dismiss the complaint.

Defendant Corning Oak Holding, Inc. (hereinafter Holding) and defendant Corning International Corporation (hereinafter International) are wholly owned subsidiaries of Corning, Inc. Holding owned all of the capital stock of Corning Frequency Controls, Inc. (hereinafter CFC), which owned Corning Frequency Control, Ltd. (hereinafter CFCL). CFCL owned real property located at 500 Beech Street West, Whitby, Ontario, Canada. Defendants, through CFC and other direct and indirect subsidiaries, were engaged in the business of designing and manufacturing crystal oscillators and quartz crystals for various electronic applications, including wireless communication networks.

In 2004, defendants entered into a stock purchase and sale agreement with plaintiff Vectron International, Inc., through which, as relevant here, defendants intended to convey to Vectron all of the capital stock of CFC. After the closing, Vectron changed the name of CFCL to plaintiff Vectron International, Ltd. (hereinafter VIL) and VIL retained ownership of 500 Beech. In 2006, Wenzel International purchased 500 Beech from VIL. In 2010, the owner of adjacent property at 606 Beech Street (hereinafter the neighbor) provided Wenzel a notice of claim alleging environmental contamination migrating from 500 Beech onto its property. Wenzel served a notice of claim on VIL, and plaintiffs served a notice of claim on defendants seeking defense and indemnification pursuant to the parties' 2004 agreement.

The neighbor commenced an action in a Canadian court

against Wenzel and VIL. After defendants declined to provide a defense in that action on plaintiffs' behalf, plaintiffs commenced this action for breach of contract and for declaratory judgment, seeking a declaration that defendants must defend and indemnify plaintiffs with regard to the environmental claims by the neighbor and Wenzel under each of the three subdivisions in section 8.6 of the agreement. Prior to answering, defendants moved to dismiss the complaint for failure to state a cause of action (*see* CPLR 3211 [a] [7]). Plaintiffs cross-moved for leave to amend their complaint. Supreme Court denied the motion to dismiss and granted the cross motion to amend the complaint. Defendants appeal.

On a motion to dismiss for failure to state a cause of action, courts afford the complaint a liberal construction, accept the facts alleged therein as true and give the plaintiffs the benefit of all favorable inferences to determine whether those facts support any cognizable legal theory (*see Nelson v Capital Cardiology Assoc., P.C.*, 97 AD3d 1072, 1073 [2012]; *Schmidt & Schmidt, Inc. v Town of Charlton*, 68 AD3d 1314, 1315 [2009]). In a breach of contract action, "[w]hether a contract is ambiguous is a question of law to be resolved by the court" (*Williams v Village of Endicott*, 91 AD3d 1160, 1162 [2012]; *see Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]; *CV Holdings, LLC v Artisan Advisors, LLC*, 9 AD3d 654, 656 [2004]). Ambiguity exists if the "language used lacks a definite and precise meaning, and there is a reasonable basis for a difference of opinion" (*Pozament Corp. v AES Westover, LLC*, 27 AD3d 1000, 1001 [2006]; *accord Williams v Village of Endicott*, 91 AD3d at 1162; *see Greenfield v Philles Records*, 98 NY2d at 569). In the context of a motion to dismiss, if the contract's language is ambiguous, then the motion must be denied to permit the parties to discover and present extrinsic evidence of the parties' intent.

Section 8.6 of the 2004 agreement addresses claims with respect to environmental matters. Pursuant to that section:*

"Sellers hereby agree to indemnify, defend and hold harmless Buyer and its Affiliates and the Operating Companies from and against all Losses resulting from:

"(i) any and all Environmental Claims resulting from Sellers' noncompliance with or violation of any applicable Environmental Law prior to or as of the Closing Date, even if such noncompliance or violation is not discovered or known until after the Closing Date;

"(ii) any and all Environmental Claims resulting from or aris-

---

* All capitalized terms are specifically defined in the agreement.

ing out of any Remedial Work performed by Sellers related to an Environmental Condition at, on, from, under or in [500 Beech] which Environmental Condition was created prior to or existed as of the Closing Date . . . ;

"(iii) any and all Environmental Claims related to the Release, or the treatment, storage, disposal, arrangement for disposal, transportation, recycling, use, reuse, or handling in any manner, at locations other than [500 Beech], of Hazardous Substances generated by or in the possession of the Companies at any time prior to or as of the Closing Date."

Under section 8.6 (i) and (ii) of the parties' agreement, there is a question of fact as to the scope of the term "Sellers." The other aspects of these subdivisions have been adequately pleaded, as plaintiffs have asserted that the neighbor and Wenzel filed environmental claims, and these claims were based on alleged violations of Canadian environmental laws and remedial work performed in 2002 when an underground storage tank was removed from 500 Beech. Although the complaint alleges that defendants are responsible, defendants contend that the allegations are contradicted by the plain language of the agreement, as the environmental law violations must be committed by, and the remedial work performed by, the "Sellers." The agreement's preamble and definition section define "Sellers" as Holding and International; that definition does not include CFC or CFCL, which are separately defined in the agreement as "Operating Companies." Defendants contend that because there is no evidence that they, as opposed to CFC or CFCL, violated environmental laws or performed remedial work, the "Sellers" did not do anything so as to give rise to liability under section 8.6 (i) or (ii).

Plaintiffs, on the other hand, point to additional language in the preamble stating that "acting through CFC and [a company owned by International] and their direct and indirect subsidiaries, Sellers are engaged in the business of designing, manufacturing and selling crystal oscillators and quartz crystals . . . (the 'Business')." Plaintiffs assert that because the environmental laws were violated and the remedial work was performed in the course of operating the "Business," defendants are liable not only for their direct actions but for those of CFC and its wholly-owned subsidiary CFCL, through which defendants were admittedly acting to conduct the "Business." Plaintiffs further argue that a more expansive reading of the term "Sellers" is supported by the definition of the term "Knowledge of Sellers," which imputes to defendants the actual knowledge of seven individuals, five of whom appear to be solely connected to

defendants' subsidiaries and two of whom apparently work for defendants' parent company; none of the named individuals appear to work for defendants, who are defined as the "Sellers." Additionally supporting a flexible reading of the agreement's terms is the introduction to the definitions section, which states that "[f]or purposes of this Agreement, except as expressly provided or *unless the context otherwise requires*, the following definitions shall apply" (emphasis added). Finally, plaintiffs argue that, inasmuch as defendants were apparently holding companies engaged in the "Business" solely through their subsidiaries, adopting defendants' interpretation of the term "Sellers" would render section 8.6 (i) and (ii) ineffectual because defendants did not directly undertake *any* actions on behalf of the "Business." Such an interpretation would violate the precepts that a contract should be considered as a whole and a reading of it "should not render any portion meaningless" (*Beal Sav. Bank v Sommer*, 8 NY3d 318, 324 [2007]; *see Elmira Teachers' Assn. v Elmira City School Dist.*, 53 AD3d 757, 759 [2008], *lv denied* 11 NY3d 709 [2008]).

"[T]he parties have advanced two equally plausible and reasonable interpretations of the [agreement] provision in question, thereby evidencing an ambiguity that requires consideration of evidence outside the four corners of the [agreement] relevant to the parties' intent" (*Williams v Village of Endicott*, 91 AD3d at 1163; *see CV Holdings, LLC v Artisan Advisors, LLC*, 9 AD3d at 656-657). Because the term "Sellers" as used in section 8.6 (i) and (ii) is ambiguous, at this pre-answer stage of litigation, Supreme Court properly denied defendants' motion so as to permit the parties to gather and present evidence regarding the meaning of that term in this context.

Regarding liability under section 8.6 (iii), however, plaintiffs have failed to state a cause of action for indemnification pursuant to the plain language of that provision. That provision does not depend on actions of the "Sellers," but requires indemnification for environmental claims related to, among other things, a "Release" of hazardous substances "at locations other than [500 Beech]." "Release" is defined to include "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, dumping or disposing of any Hazardous Material into the environment." In its Canadian action, the neighbor alleged that contaminants—which would be classified as "Hazardous Materials" under the agreement—in the ground at 500 Beech migrated into the soil and groundwater at 606 Beech. There is no allegation that hazardous substances were spilled, leaked or otherwise disposed of directly onto the property at 606 Beech.

Rather, the allegation is that the flow of underground water carried those substances from 500 Beech, where they had been spilled or leaked, to the neighboring property. Although the hazardous substances eventually wound up at 606 Beech, there is no support for an allegation that the "Release" of those substances occurred at a location other than 500 Beech. Thus, plaintiffs cannot state a viable cause of action for indemnification under section 8.6 (iii) of the agreement.

Supreme Court did not err in granting plaintiffs' cross motion to amend the complaint. Plaintiffs merely augmented the allegations contained in the original complaint. Defendants do not contest the amendment itself, other than arguing that the initial claims have no merit. Supreme Court did not abuse its discretion in granting the cross motion because leave to amend should be freely granted, defendants have not shown any prejudice from the amendment and the amended complaint does not plainly lack merit—other than the portion seeking indemnification under section 8.6 (iii) of the agreement (*see Backus v Lyme Adirondack Timberlands II, LLC*, 96 AD3d 1248, 1250 [2012]).

Rose, J.P., Lahtinen and Egan Jr., JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as (1) denied that part of defendants' motion to dismiss plaintiffs' claim seeking indemnification under section 8.6 (iii) of the agreement or alleging a breach of that provision of the agreement and (2) granted that part of plaintiffs' cross motion to amend the complaint to seek indemnification under section 8.6 (iii) of the agreement; motion granted to that extent and cross motion denied to that extent; and, as so modified, affirmed.